**Hortencia BOHEN, Plaintiff-Appellant,**

v.

**CITY OF EAST CHICAGO, INDIANA, et al., Defendants-Appellees.**

**No. 85–2751.**

United States Court of Appeals, Seventh Circuit.

Argued May 5, 1986.

Decided Aug. 28, 1986.

---

**1182**

Ivan E. Bodensteiner, Valparaiso, Ind., for plaintiff-appellant.

Anthony DeBonis, Jr., Murphy McAtee Murphy & Costanza, East Chicago, Ind., for defendants-appellees.

Before BAUER, POSNER, and FLAUM, Circuit Judges.

BAUER, Circuit Judge.

Hortencia Bohen, a former employee of the City of East Chicago Fire Department, brought the action below claiming that she was fired on the basis of her national origin or sex or in retaliation for filing discrimination charges with the Equal Employment Opportunity Commission. She also alleged she was the victim of sexual harassment on the job. Her complaint maintained that the discharge and sexual harassment violate Title VII of the Civil Rights Act of 1964 and the equal protection clause of the fourteenth amendment to the United States Constitution. The district court denied Bohen all relief and entered judgment accordingly.

On appeal Bohen alleges four errors by the district court. She maintains that (1) the district court erred in determining that she was not fired on the basis of national origin or sex or in retaliation for filing discrimination charges with the EEOC but rather was fired for just cause, (2) the district court erred in holding that Bohen was not entitled to nominal damages, costs,

and attorney's fees under Title VII for sexual harassment that did not result in discharge, (3) the district court erred in denying her leave to amend her complaint, and (4) the district court erred in holding that sexual harassment is not compensable as a violation of the equal protection clause.

We agree with Bohen that the sexual harassment she endured and proved at trial is compensable under the equal protection clause. We, therefore, reverse the district court's contrary holding and remand the case for a determination of damages. In all other respects, however, we disagree with Bohen's arguments and affirm the judgment below.

**I.**

Hortencia Bohen is a Hispanic woman. She was hired by the City of East Chicago Fire Department as a dispatcher on December 3, 1979. On May 9, 1983, she was discharged.

Throughout the duration of her employment with the City, Bohen was the victim of sexual harassment. On Bohen's first night of work (the 11:00 P.M. to 7:00 A.M. shift), she took a short nap and awoke to find the senior dispatcher's hands pressed against her crotch. Bohen fought the dispatcher off and later complained to an assistant chief. This incident was but the first of many as found by the district court.

The same senior dispatcher (who later became Head Dispatcher and thus Bohen's immediate supervisor) was the source of most of the abuse. He constantly spoke to Bohen in a lewd way, not just using profanity in the course of discussing other subjects, but speaking to her entirely of sexual matters and describing his preferred sexual positions, Bohen's participation, and his expectations for her behavior. He would rub his pelvis against her rear when she stood and would spread his legs so that he was always touching her when she sat. When Bohen used the bathroom, this same dispatcher forced her to leave the door open (although the bathroom was down a hall-

way and not in his plain view if he remained at his work station).

Others at the fire department also enjoyed tormenting Bohen with sexual abuse. She was a continual target for obscene comments by firefighters and other male employees and was forced to listen to their filthy talk and descriptions of their sexual fantasies of which she was the object. On one occasion, a captain in the department informed Bohen (in words of another color) that a forcible rape in some nearby flora would improve her disposition. Bohen's fellow employees were also apparently much amused by implying that Bohen's cool reception to their constant invitations to engage in deviate sexual conduct was evidence of lesbian tendencies.

Although Bohen was a favorite target, she was not the sole victim of sexual harassment by the East Chicago Fire Department. The record shows that other female dispatchers endured similar, and in some instances more egregious, abuse.

While the conditions at the East Chicago fire department were outrageous, Bohen brought problems of her own to the work place. The evidence reveals Bohen was a chronic complainer given to obstreperous conduct, personal grievances, and temperamental outbursts of anger directed towards her fellow employees and superiors. She spread rumors about others. She made frequent unsupported accusations against others, including allegations of violent physical abuse. She even brought unfounded criminal charges against superiors. In short, although Bohen was competent at the fundamentals of her job (relaying information regarding fires and dispatching the proper equipment), she was less than a model employee when it came to getting along with fellow workers, especially her superiors.

In addressing Bohen's claims, the district court sorted through the evidence and made the following key findings. Most importantly, the district court found that, although Bohen undoubtedly endured extreme and ongoing sexual harassment, she was not fired because she is a woman, she was not fired because she is Hispanic, and she was not fired in retaliation for her filing charges of discrimination with the EEOC (which she did in 1982). Rather, the district court specifically found that Bohen was fired for "obstreperous and insubordinate conduct." *Bohen*, 622 F.Supp. 1234, 1237 (N.D.Ind.1985). The district court therefore held that Bohen was not discharged in violation of Title VII or the equal protection clause. The district court also determined that it was unnecessary to determine whether the sexual harassment that Bohen endured was itself a violation of Title VII since the available remedies under Title VII are limited to back pay, reinstatement, or other equitable relief and thus Bohen could not obtain damages without being discharged in violation of Title VII. Finally, the district court held that sexual harassment does not constitute actionable discrimination on the basis of sex for purposes of the equal protection clause and therefore denied Bohen's § 1983 action for damages for sexual harassment. Bohen now brings this appeal.

## II.

Bohen argues the district court incorrectly determined that she was fired for cause and not because of her sex or national origin or in retaliation for filing charges of discrimination with the EEOC. We disagree.

We may only overturn the district court's determination of the motivation for Bohen's discharge if it is clearly erroneous. *Batson v. Kentucky*, —— U.S. ——, 106 S.Ct. 1712, 1742 n. 21, 90 L.Ed.2d 69 (1986). We find the district court judge carefully and thoroughly weighed the evidence and correctly determined that Bohen's discharge was not discriminatory. The district court judge combed through a mass of conflicting testimony. He evaluated the strength and continuity of each side's case, weighed the relative credibility of the witnesses, and made clear and careful findings of fact. The district court's conclusions were reasonable and consistent. We find nothing to indicate that his finding regard-

ing the motivation for Bohen's discharge is clearly erroneous.

### III.

◼ We also disagree with Bohen's contention that the district court erred in denying her damages, costs, and attorney's fees under Title VII. The statute clearly provides that under Title VII "the court may ... order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement ..., back pay ..., or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g). Since damages are not equitable relief, most courts have held that damages are not available to redress violations of Title VII that do not result in discharge. *Muldrew v. Anheuser-Busch*, 728 F.2d 989, 992 n. 2 (8th Cir.1984); *Bundy v. Jackson*, 641 F.2d 934, 946 n. 12 (D.C.Cir.1981); *DeGrace v. Rumsfeld*, 614 F.2d 796, 808 (1st Cir.1980) (collecting cases). *See also, Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979) (dicta). This construction is in accord with the long-standing interpretation given similar language in the National Labor Relations Act, 29 U.S.C. § 160(c). *Walker v. Ford Motor*, 684 F.2d 1355, 1364 (11th Cir.1982).

Several circuits have begun to suggest in *dicta* that nominal damages could be awarded in situations like these to create a remedy on which to tack an award of costs and attorney's fees. *Katz v. Dole*, 709 F.2d 251, 253 n. 1 (4th Cir.1983); *Henson v. City of Dundee*, 682 F.2d 897, 905–06 & n. 12 (11th Cir.1982); *Joshi v. Florida State University*, 646 F.2d 981, 991 n. 33 (5th Cir.1981), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2233, 72 L.Ed.2d 845 (1982); *T & S Service Associates v. Crenson*, 666 F.2d 722, 728 n. 8 (1st Cir.1981). We believe the better view, in accord with the majority of decisions, is that no damages are available under Title VII. If Congress wishes to amend the provisions of Title VII to provide a remedy of damages, it can do so. Until then, this court may only enforce the statute as written, and as currently written Title VII does not contemplate damages.

### IV.

◼ We also disagree with Bohen's contention that the district court erred in denying her leave to amend her complaint. Although we feel it is a very close case, we cannot find that the district court abused its discretion in denying Bohen's motion.

Bohen filed her complaint on August 4, 1983. She did not undertake any significant discovery, however, until early 1985. She moved to amend her complaint to add additional state law claims and seek additional forms of relief on March 6, 1985. (Bohen's amended complaint added the claim that the defendants' actions constituted "tortious conduct under the laws of Indiana" and sought new relief including a declaratory judgment and injunction.) At that point, the court had already ordered that discovery conclude on March 18, 1985, had set final pretrial conference for March 29, 1985, and had set trial for April 8, 1985.

We review a district court's ruling on a motion to amend a complaint only to determine whether the judge has abused his discretion. *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Knapp v. Whitaker*, 757 F.2d 827, 849 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 36, 88 L.Ed.2d 29 (1985). Although leave to amend should be "freely given when justice so requires," Fed.Rule of Civ.Proc. 15(a), considerations of delay and prejudice may preclude automatic grant of an amendment. *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Textor v. Board of Regents*, 711 F.2d 1387, 1391 (7th Cir.1983).

The district court judge examined Bohen's amendment in light of many factors. He noted the prejudice it would cause defendants if granted and the harm it would cause Bohen if denied. The court also pointed out that Bohen's prosecution of the case had been less than diligent, and right-

ly noted that the interest of judicial economy might be served by combining Bohen's claims in the amended complaint but would also be disserved by the resulting delay. Taking all these factors into account, the judge determined that the amendment was not justified and denied Bohen's motion.

A trial judge is particularly well-situated to judge the worthiness of a plaintiff's motion to amend his complaint, having been involved in the progress of the case throughout its development and having viewed first-hand the party's diligence or lack thereof. The district court judge here looked at the proper factors when considering Bohen's motion to amend. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Knapp v. Whitaker*, 757 F.2d 827, 849 (7th Cir.1985). We cannot say that the judge's decision to deny Bohen's motion to amend rises to the level of an abuse of discretion, although we reemphasize that amendments should ordinarily be freely granted. We find it difficult from our perspective on appeal to see any great hardship that Bohen's amended complaint would have placed on the defendants or the judicial system. But simply because we may have come to a different conclusion than the trial judge does not mean that the judge abused his discretion. *See Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir.1975). The judge undertook the proper inquiry in addressing Bohen's motion, and we defer to the judge's determination that the delay and hardship that would be caused by granting the amendment was not justified in light of Bohen's delay in bringing the motion and in prosecuting the case in general.

## V.

Finally, Bohen argues that the district court erred when it determined that sexual harassment does not constitute actionable sex discrimination under the equal protection clause of the fourteenth amendment to the United States Constitution. We agree.

## A.

■ The Supreme Court and this court have held that the equal protection clause contains a "federal constitutional right to be free from gender discrimination" that does not "serve important governmental objectives" and is not "substantially related to those objectives." *Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979) (quoted); *Huebschen v. Dept. of Health and Social Services*, 716 F.2d 1167, 1171 (7th Cir.1983). All district courts (except the court below) that have interpreted this language as it applies to sexual harassment by a state employer have determined that such harassment constitutes sex discrimination in violation of the equal protection clause and is actionable under § 1983. *Gobla v. Crestwood School District*, 609 F.Supp. 972, 978–79 (M.D.Penn.1985); *Moire v. Temple University*, 613 F.Supp. 1360, 1366 (E.D.Penn.1985); *Scott v. City of Overland Park*, 595 F.Supp. 520, 529 (D.Kan.1984); *Skadegaard v. Farrell*, 578 F.Supp. 1209, 1216–17 (D.N.J.1984); *Woerner v. Brzeczek*, 519 F.Supp. 517, 519–20 (N.D.Ill.1981). This court has already assumed that this is the law. *Heubschen*, 716 F.2d at 1172 ("sexual harassment ... directed solely at [a] plaintiff because she is a woman" is actionable as a violation of the equal protection clause). Today we so hold.

Sexual harassment of female employees by a state employer constitutes sex discrimination for purposes of the equal protection clause of the fourteenth amendment. Creating abusive conditions for female employees and not for male employees is discrimination. *See Meritor Savings Bank v. Vinson*, — U.S. —, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (sexual harassment is sex discrimination for Title VII purposes). Forcing women and not men to work in an environment of sexual harassment is no different than forcing women to work in a dirtier or more hazardous environment than men simply because they are women. Such unjustified unequal treatment is exactly the type of behavior prohibited by the equal protection clause as interpreted in *Davis v. Passman*, 442 U.S. 228,

234–35, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979).

### B.

Having determined that a constitutional right to be free from sexual harassment by a state exists, the next and more difficult issue is defining the scope of that right. Fortunately, we are not without guidance in this inquiry. The Supreme Court has recently examined the scope of the analogous right under Title VII, the lower courts have undertaken some initial examination of the equal protection right, and many general equal protection principles apply to a sexual harassment claim.

In *Meritor Savings Bank v. Vinson,* —— U.S. ——, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court indicated that a plaintiff can establish a case of actionable sex discrimination for Title VII purposes by demonstrating that sexual harassment by the employer "has created a hostile or abusive working environment." *Vinson,* —— U.S. at ——, 106 S.Ct. at 2405. "[N]ot all workplace conduct that may be described as 'harassment,'" however, constitutes sex discrimination. *Ibid.* The harassment "must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Ibid.* (quoting *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971)). This determination is made by the trier of fact "in light of 'the record as a whole' and 'the totality of circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred.'" *Id.* —— U.S. at ——, 106 S.Ct. at 2407 (quoting 29 C.F.R. § 1604.-11(b)).

The courts that have addressed the equal protection right to be free from sexual harassment at the hands of a state employer have had only minimal opportunity to outline the scope of the right. Some basic principles with which we agree have been determined, however. "[E]very passing overture made by a male public official to a female public employee because of her gender" is not a denial of equal protection.

*Skadegaard v. Farrell,* 578 F.Supp. 1209, 1216 (D.N.J.1984). Likewise, "a single, innocent, romantic solicitation which inadvertently causes offense to its recipient" is not a denial of equal protection. *Id.* at 1217; *Moire v. Temple University,* 613 F.Supp. 1360, 1369–70 (E.D.Penn.1985). Although no court has attempted to articulate a definitive test, several fact situations have been found to constitute sufficient sexual harassment to amount to sex discrimination for equal protection purposes. For example, liability was found where there were "repeated crude sexual advances and suggestive comments" by the plaintiff's Assistant Supervisor that "persisted despite plaintiff's explicit and consistent rejection of his advances," where the same Assistant Supervisor sexually assaulted the plaintiff at work, and where there was a conspiracy among other supervisors to protect the Assistant Supervisor from disciplinary action for his conduct and to impeach the plaintiff's reputation and professionalism through lies and false charges. *Skadegaard v. Farrell,* 578 F.Supp. 1209, 1212 (D.N.J.1984). Liability was also found where a plaintiff who was a police officer was sexually harassed by her immediate supervisor-chief. This harassment included "(1) embarrassing and belittling remarks in front of fellow officers; (2) repeated sexual advances; (3) interception of mail and phone messages; and (4) harassment of male police officers who requested to work with [the plaintiff]." *Woerner v. Brzeczek,* 519 F.Supp. 517, 518 (N.D.Ill.1981). While no guiding principles are enunciated by these cases, we agree that the situations addressed therein constitute actionable sex discrimination for equal protection purposes.

As a final guidepost, we turn to an examination of principles that are generally applicable to all equal protection claims. The core of any equal protection case is, of course, a showing of intentional discrimination. *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 1719–21, 90 L.Ed.2d 69 (1986). As a general matter, a single discriminatory act against one indi-

vidual can amount to intentional discrimination for equal protection purposes. *Batson v. Kentucky,* — U.S. —, 106 S.Ct. 1712, 1722, 90 L.Ed.2d 69 (1986); *Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252, 266 n. 14, 97 S.Ct. 555, 563 n. 14, 50 L.Ed.2d 450 (1977). An equal protection plaintiff therefore need not prove a discriminatory policy against an entire class; discrimination against the plaintiff because of her membership in the class is by itself enough. *Adickes v. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). Evidence of a pattern or practice of discrimination, however, is of course strong evidence supporting a plaintiff's claim that she herself has been the victim of discrimination.

■ With these legal guideposts in mind, several broad outlines for a claim of sexual harassment under the equal protection clause become discernible. First, the ultimate inquiry is whether the sexual harassment constitutes intentional discrimination. This differs from the inquiry under Title VII as to whether or not the sexual harassment altered the conditions of the victim's employment. That standard comes from the regulations promulgated under Title VII. *See Vinson,* — U.S. at —, 106 S.Ct. at —. Second, a plaintiff can make an ultimate showing of sex discrimination either by showing that sexual harassment that is attributable to the employer under § 1983 amounted to intentional sex discrimination or by showing that the conscious failure of the employer to protect the plaintiff from the abusive conditions created by fellow employees amounted to intentional discrimination. *Accord Meritor Savings Bank v. Vinson,* — U.S. —, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To make this showing, it is not necessary to show that all women employees are sexually harassed. Harassment of the plaintiff alone because of her sex is enough. It is a good defense, however, if the employer

can show that the harassment suffered by the plaintiff was directed at the plaintiff because of factors personal to her and not because she is a woman. *Huebschen,* 716 F.2d at 1172. Finally, we find it most unlikely that a defendant can defeat a claim of sexual harassment by showing that the harassment was justified or had a legitimate business purpose. The nature of the harm is such that there is virtually no scenario imaginable where sexual harassment is a necessary business practice or is substantially related to important governmental objectives.[1]

### C.

■ Applying these principles to Bohen's claim, it is clear that she was the victim of sexual harassment and that the sexual harassment amounted to sex discrimination for purposes of the equal protection clause. The district court's specific findings of fact make this conclusion inescapable. The court found that Bohen suffered many instances of sexual harassment and often complained of them through official channels, but that nothing was done. *Bohen,* 622 F.Supp. at 1238. Further, "the department did not even have a written policy against sexual harassment until after Bohen had been fired." *Id.* It is clear that supervisory department officials knew of the sexually oppressive working conditions even before Bohen was hired since they warned her of them during an office interview. The department, however, considered the abusive environment to be the female employees' problem. As the district court stated:

> [B]efore she took the job, [Bohen] was warned in an office interview with [the Chief] that the fire-fighters were "kind of nasty" and would "try anything;" as a result, the chief informed her, she must not socialize with the men, must not enter the apparatus room, and must dress

1. A sexual harassment plaintiff need not show, as the district court suggested, that the sexual harassment furthered some illegitimate governmental purpose. *Bohen,* 622 F.Supp. at 1247 n. 8. Once the plaintiff shows discrimination, it is the government's burden to show a legitimate government purpose for that unequal treatment. *Davis v. Passman,* 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979).

to cover herself from neck to toe. Sexual problems lay ahead, and the department put the entire burden on the female dispatchers.

*Bohen*, 622 F.Supp. at 1238. Finally, the court made specific findings regarding the nature of harassment that Bohen suffered.

I am convinced that Bohen was the victim of sexual harassment, just as she described it. Her testimony was strongly corroborated....

. . . . .

I find that [the Head Dispatcher] touched Bohen offensively and repeatedly, that [he] insisted that Bohen keep the bathroom door open, that [a Captain in the fire department] made a veiled threat of rape, that the conversation in the fire station was filled with lurid sexual descriptions, and that when Bohen declined to take part in all this good fun some officers spread a rumor that Bohen is a lesbian.... [S]upervisory officials knew the general picture if not the details; more, [the Head Dispatcher] is himself a supervisor.... The sexually offensive atmosphere ... made working as a dispatcher a great deal more aggravating and humiliating; had Bohen been male, she would not have suffered as she did.

*Id.* at 1239–1240.

While we may rely on the district court's findings of fact to determine that Bohen has suffered sexual harassment constituting sex discrimination for equal protection purposes, we have no findings that would allow us to determine the amount of damages necessary to fully compensate Bohen for her injury. The district court indicated that "an award of at least $20,000.00 in compensatory damages" might be appropriate, *Bohen*, 622 F.Supp. at 1245, but made no specific finding in this regard. We, therefore, remand the case for a determination of damages by the district court in the first instance.

### D.

Because some issue has been made of it on appeal, we also find it necessary to address the question of whether the sexual

harassment that Bohen endured was harassment by the East Chicago Fire Department itself under 42 U.S.C. § 1983. The district court judge specifically found that the individual acts of harassment engaged in by supervisory personnel in the course of their duties were "properly attributable to the department." *Bohen*, 622 F.Supp. 1234, 1240. But, this finding was apparently only with regard to the fire department's liability under Title VII. *Id.* (citing Title VII regulations and case law).

The district court did not make any specific finding that the harassment inflicted upon Bohen was or was not attributable to the fire department and city for § 1983 purposes. In the only passage that can be said to address this question, the trial judge stated without citing a case that the "government" had not sexually harassed Bohen; the "government" had merely refused to protect Bohen from harassment by her fellow employees. *Bohen*, 622 F.Supp. at 1246–1247.

Assuming that this off-hand observation amounts to a finding that the acts of individuals in the fire department are not attributable to the City, we must disagree. When the lower court determined that the fire department itself was not harassing Bohen but was simply failing to protect her from harassment (with the same lack of protection it gave all employees, male and female), it had already assumed that the harassment was done by individual employees and was not attributable to or done by the department or city. The court failed to undertake the appropriate inquiry, well-established in the case law, to determine whether employees' actions are attributable to their state agency/employer under § 1983 as actions of the agency itself.

 Under § 1983, actions of a state entity's employees are attributed to the state entity itself if those actions are in furtherance of the entity's "policy or custom." *Pembaur v. City of Cincinnati*, —— U.S. ——, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658,

694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 870 (7th Cir.1983). A single act of a sufficiently high-ranking policy-maker is sufficient to establish an entity's policy or custom. *Pembaur v. City of Cincinnati,* —— U.S. ——, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986); *Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 283–84 (7th Cir.1986). A policy or custom may also be established by proving that the conduct complained of is a "well-settled ... practice ... even though such a custom has not received formal approval through the body's decision making channels." *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 870 (7th Cir.1983). "[P]ractices of state officials could well be so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (quoting *Adickes v. S.H. Kress,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970)). An entity may be liable even for "informal actions, if they reflect a general policy, custom, or pattern of official conduct which even tacitly encourages conduct depriving citizens of their constitutionally protected rights." *Wolf-Lillie,* 699 F.2d at 870.

Applying these principles to the trial court's underlying findings of fact, it is clear that Bohen has an actionable § 1983 claim against all defendants, including the fire department and the City of East Chicago. The district court found that individual acts of harassment were engaged in by supervisory personnel in the course of their supervisory duties. Other management officials responsible for working conditions at the fire department "knew the general picture if not the details" of the pattern of sexual harassment. *Bohen,* 622 F.Supp. at 1240. Complaints by the victims of sexual harassment were addressed superficially if at all, and the department had no policy against sexual harassment. In sum, sexual harassment was the general, on-going, and accepted practice at the East Chicago Fire Department, and high-ranking, supervisory, and management officials responsible

for working conditions at the department knew of, tolerated, and participated in the harassment. This satisfies § 1983's requirement that the actions complained of be the policy or custom of the state entity.

## VI.

To repeat: we find that the district court's determination that Bohen was not fired on the basis of sex or national origin or in retaliation for filing charges of discrimination with the EEOC was not clearly erroneous, the district court did not err in denying Bohen damages, costs, and attorney fees under Title VII for sexual harassment that did not result in discharge, and the district court did not abuse its discretion in denying Bohen's motion to amend her complaint. We also find, however, that the district court erred in determining that the sexual harassment suffered by Bohen does not constitute actionable sex discrimination under the equal protection clause. The district court's judgment denying Bohen all relief is, therefore, reversed in part and her cause remanded for a determination of damages.

POSNER, Circuit Judge, concurring.

I concur in the decision and in all of the majority opinion except the part about the equal protection claim. I find the claim more troublesome than my brethren do, and although ultimately I agree that it is a valid claim I would characterize it differently from them: not as a claim of sexual harassment but as a claim of failure to protect the plaintiff against such harassment. The difference is important because the male employees who actually harassed her are not the people she has sued.

In rejecting her claim, the district court relied primarily on the principle, enunciated in a number of recent decisions of this court, that the state has no general federal constitutional duty to protect the health or welfare of its people; the Constitution (with immaterial exceptions) is a charter of negative rather than positive liberties. *Ellsworth v. City of Racine,* 774 F.2d 182,

185–86 (7th Cir.1985); *Hinman v. Lincoln Towing Service, Inc.*, 771 F.2d 189, 194 (7th Cir.1985); *Jackson v. Byrne*, 738 F.2d 1443, 1446–47 (7th Cir.1984); *Jackson v. City of Joliet*, 715 F.2d 1200, 1203–04 (7th Cir.1983); *Bowers v. DeVito*, 686 F.2d 616 (7th Cir.1982). So if as in *Jackson v. City of Joliet, supra,* police and firemen negligently fail to save the occupants of a car trapped when through no fault of the state it leaves the road, crashes, and bursts into flame, the state has not deprived the accident victims of liberty. But where the liberty asserted is not the right to basic public services such as police and fire protection but the right to equal treatment irrespective of race or sex, the analysis is more complex. Although there is no constitutional right to police protection, there is a right not to be denied such protection because one is black or a woman. The central purpose of the equal protection clause, made clear by its wording, is to prevent states from withdrawing legal protection from minorities, thereby making the members of minority groups outlaws in the literal sense. Although women are not a minority, and as the district court pointed out were not among the intended beneficiaries of the equal protection clause when it was enacted, intentional discrimination against women is now considered a violation of the clause. If a state or city deliberately refused to provide police protection for women, it would be violating the equal protection clause even though the people from whom it was failing to protect women were private persons rather than government agents.

Now this suit is not against the employees who actually harassed Miss Bohen, but against the city itself and high city officials. Therefore, so far as the harassment itself is concerned, it is as if it had been done by private persons. Thus the issue as I view it is not whether sexual harassment violates the equal protection clause. Miss Bohen is not complaining about sexual harassment as such; she has not named as defendants the people who harassed her; she is complaining about the defendants' failure to take steps to prevent such harassment. Her legal theory is that by failing to take steps against harassment by her male coworkers the city was guilty of a selective, deliberate withdrawal of police protection from a female employee because of her sex. The district court rejected this theory because the court viewed the city's policy as one of blanket nonprotection against sexual harassment whether the victims were male or female—viewed the case in short as one where a woman was complaining about lax police protection not for women as such but for all citizens. However, sexual harassment of men by women is extremely rare and there is no suggestion that it ever occurred in the fire department or any other municipal office in East Chicago. A policy of never responding to complaints about sexual harassment can therefore be analogized to a police department's policy of never responding to complaints of rape. Such a policy would violate the equal protection clause if no effort were made to justify the policy; it would not be saved by pointing out that men sometimes rape other men and that (depending on the specific wording of a state's rape law) a woman might in principle rape a man.

There must, though, be a policy of nonresponse to complaints of harassment, or an authoritative decision not to respond; no more than in Title VII cases (even less, I shall argue) is the employer automatically liable for acts of harassment by employees. See *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1421–22 (7th Cir.1986). But the facts found by the district court show a policy—not a policy of harassment, whatever exactly that would be, but a deliberate refusal to respond to complaints of harassment. The chief of the fire department was aware of the harassment, which was frequent rather than isolated and in which at least one supervisory employee was implicated; yet he did nothing. It was as if the chief knew that his men were systematically refusing to put out fires in homes owned by blacks, yet did nothing to correct the situation.

All this is not to suggest that the equal protection clause requires a state or municipality to devote disproportionate resources to preventing (or, more realistically, limiting) sexual harassment. Suppose the City of East Chicago had for purely fiscal reasons decided that in its fire department the law of the jungle would reign; the city would not discipline any employee for any misconduct, sexual or otherwise, toward another employee—whether the misconduct was theft, or battery, or rape, or anything else. Then women employees, even if they were hurt more by the policy than the men, could not complain of a selective withdrawal of protection, and hence of intentional discrimination against them, any more than they could complain if the city paid the market wage rate to all its employees and the rate happened to be higher for men than for women. *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 722 (7th Cir.1986). But the record does not suggest that the city was indifferent to employees' misconduct toward each other; so far as appears, the city disciplined employees for all misconduct except sexual harassment, with the result of giving its female employees systematically less protection than its male employees.

If there were a reason for this disparity, the disparity would not be actionable discrimination. In *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), the Supreme Court held that an employer could, without violating Title VII, refuse to pay disability benefits for pregnancy, even though the burden of the refusal fell entirely on its female employees; it was enough, to rebut an inference of sex discrimination, that pregnancy differed in relevant respects from other conditions that require absence from work. Conceivably, sexual harassment may differ sufficiently from other forms of employee misconduct to justify fewer preventive efforts by the employer. It is difficult to police (because it is hard to distinguish from ordinary workplace flirtation), and probably can never be completely extirpated from the workplace. A reasonable effort to limit it is all that Title VII requires,

as we noted recently in reference to the related problem of racial harassment in the workplace, see *Hunter v. Allis-Chalmers Corp., supra,* 797 F.2d at 1421–22; and what is good enough under Title VII should be good enough under the Constitution. Indeed, an effort that fell far short of being reasonable could still rebut an inference of intentional discrimination—the only type of discrimination the equal protection clause forbids. Suppose the defendants were distressed at the sexual harassment in the fire department and did their best to stamp it out, but their best was very poor—was below an objective standard of reasonable care. Still it would be hard to say they were guilty of intentional discrimination, when their intent was not to discriminate. But so far as appears, the city simply didn't care whether its female employees were harassed. Even though (as I shall argue shortly) efficiency would have required some efforts to prevent or at least limit such harassment, the city did nothing. Its inaction brings this case within the orbit of the example I gave earlier of a fire department that has a policy of never responding to calls from black homeowners.

There is another way of looking at this case, but it leads to the same conclusion. By taking no steps to prevent sexual harassment, the city created a worse working environment for women than for men, and this lowered the women's wages (net of all disamenities and other costs of work) relative to the men's. That is discrimination, though in a constitutional analysis it might be excusable on various grounds—for example, that the cost of preventing sexual harassment without overly intrusive surveillance of workers was prohibitive; but no effort at excuse or justification was made. It is as if the city decided to provide restrooms for male but not female employees, and when pressed for a reason said it simply didn't care whether its female employees were comfortable or not. That is a fair summary of the city's position in this case. Hostility to women was not shown, but did not have to be; indifference to their welfare was enough.

The case can also be analogized to one of constructive termination. If the defendants refused to hire women who were as qualified as men, or fired women in circumstances where men would not be fired, there would be little argument over whether this was intentional discrimination. But a policy of never responding to complaints of sexual harassment will make the workplace unbearable for many women, and force them to quit; that is constructive termination, and is the same thing in law as firing. See, e.g., *Remus v. Amoco Oil Co.,* 794 F.2d 1238, 1240 (7th Cir.1986); *Parrett v. City of Connersville,* 737 F.2d 690, 694 (7th Cir.1984). If responding to such complaints would put special burdens on the employer, as granting disability benefits for pregnancy might do, the inference of intentional' discrimination would be weakened, perhaps destroyed; but no extenuating circumstances are suggested in this case. The city isn't being asked to do more for women than for men, as General Electric was being asked to do in the *Gilbert* case. Male employees, so far as appears, can get a response to any complaint of misconduct by coworkers; females can get no response to complaints of sexual misconduct by coworkers. To labor perhaps excessively the main point of this opinion, if the city's reason for turning a deaf ear to this subset of complaints about misconduct were something other than the victims' sex, the city would not be guilty of intentional discrimination, the only kind that violates the equal protection clause. But it has advanced no reason.

The district court thought that one reason that the city's failure to protect Miss Bohen against sexual harassment did not violate the equal protection clause was that such harassment serves no bona fide municipal purpose. Probably that is true. If such harassment is rampant, the city will have to pay higher wages to attract female employees. It is unlikely to reap an offsetting gain in lower wages for male employees who obtain along with their jobs a license as it were to harass female workers. Many, perhaps most, men don't want such a license; and among those who do,

still most don't value it as much as women disvalue being harassed. More important, the productivity of both male and female employees must suffer if ·harassment is common. But to infer from the fact that sexual harassment is not in the employer's best interests that the amount of harassment is no more than the irreducible residue after all reasonable efforts are taken to prevent it would be perilous on three grounds. First, the record discloses no efforts. Second, public agencies do not have as strong incentives as private firms to follow efficient practices. Compare *American Nurses' Ass'n v. Illinois, supra,* 783 F.2d at 720. The City of East Chicago's fire department has no competition; nor has it shareholders who will benefit if it reduces its costs of operation. Third, the people who control a public agency may *want* to discriminate against some group; indeed, that is the basic justification for the equal protection clause. Government agencies do not always behave in accordance with the principles of enlightened government. The findings made by the district court indicate that the City of East Chicago allowed Miss Bohen to be harassed by her coworkers in the fire department for no other reason than that she was a woman; this is intentional sexual discrimination and violates the equal protection clause.