Barbara **HEFLIN** and Rebecca **Tipps, Plaintiffs,**

v.

John **DALY, Charles Cali, William Rolando, and Mark Sorenson, Defendants.**

No. 86–3364.

United States District Court, C.D. Illinois, Springfield Division.

Aug. 17, 1990.

---

**516**

Mary Lee Leahy, Springfield, Ill., for plaintiffs.

Lance T. Jones, Asst. Atty. Gen., Springfield, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

Barbara Heflin and Rebecca Tipps were both the victims and perpetrators of outrageous harassment.

This litigation began in 1986 and culminated in 1990 in a verdict in favor of the Defendants following a week-long jury trial. The lesson taught by this case is that federal laws are intended to protect an individual's civil rights but are not to be used to obtain redress for mere personal grievances.

At one time discrimination and harassment based upon race, sex, national origin or religion were common place. Although greatly abated now, this problem still exists in our society today and probably will for the foreseeable future. At present, both federal and state law clearly prohibit such discrimination and harassment. *See, e.g.,* U.S. Const. amend. XIV; 42 U.S.C. §§ 1981 (race), 1983 (deprivation of rights under color of state law), 1985 (conspiracy), 2000e et seq. (Title VII); Ill. Const. of 1970 Art. I, §§ 17 (employment and sale of property), 18 (sex), 19 (handicapped); Ill.Rev. Stat. ch. 68 (Illinois Human Rights Act).

The emphasis upon equal rights and the eradication of such discrimination during the last 25 years has, however, produced an unfortunate and debilitating backlash. Allegations of discrimination or harassment have become a powerful weapon for a disgruntled employee seeking to settle a perceived private score with his or her employer.

At the beginning we noted that the Plaintiffs in this action were the victims of appalling and grossly offensive sexual harassment. There was no question that both Barbara Heflin and Rebecca Tipps were sexually harassed by a co-worker, Manker Harris, in an intolerable and insulting manner. In fact, Harris was named as a Defendant in this action but never even answered the complaint. A default judgment was entered against him and the jury awarded the Plaintiffs $62,500 in compensatory and punitive damages for his conduct.

However, the Plaintiffs also named five other co-workers as Defendants—all of whom were unjustly accused. To fully understand this case we must return to its inception.

The Archives Department of the Illinois Secretary of State's Office operates under the provisions of The State Records Act, Ill.Rev.Stat. ch. 116, ¶ 43.4 *et seq.,* and The Local Records Act, *id.* ¶ 43.101 *et seq.* Generally, the Archives Department supplies records management services to all governmental agencies in Illinois. The events at issue in this case unfolded over a nine-year period beginning in 1981. During this time a total of only 37 employees, both men and women, worked in the Archives Department.

But before the events of this drama unfold, we briefly review the cast of characters:

*Dr. John E. Daly* was appointed to the position of Director of the Archives Department in August 1974. Prior to his appointment, Dr. Daly was the assistant city archivist in the Philadelphia city archives, Department of Records, from 1963 until 1974. He received his Ph.D. in American history from the University of Pennsylvania in 1983.

*Charles L. Cali* was appointed as an Archivist I in the Archives Department in June 1975. He holds a masters degree in history from West Virginia University. By August 1980, Mr. Cali had been promoted to the position of Senior Archivist II and was the supervisor of the inventory control section. He reported directly to Dr. Daly.

*William A. Rolando* joined the office of the Secretary of State in March 1981. In the fall of 1985, Mr. Rolando was appointed Director of Personnel.

*Mark Sorenson* was hired as a Senior Archivist II in January of 1982. He holds a masters degree in history from Sangamon State University.

*Rebecca Tipps* was hired as a Clerk III in the Archives Department in October 1976. She holds a bachelors degree in law enforcement from Western Illinois University. By 1982, Miss Tipps had been promoted to the position of Archivist II.

*Barbara Heflin* was appointed to the position of Archivist I within the Archives Department in January 1980. She holds a masters degree in political science from Eastern Illinois University. By 1982 Miss Heflin also had been promoted to the position of Archivist II.

■ Now the script. On December 23, 1986, the Plaintiffs filed a three-count complaint against Dr. Daly, Mr. Cali, Mr. Rolando, Mr. Sorenson, Mr. Harris, and Mr. Carl Herder. In Count I, Plaintiffs alleged that Dr. Daly, Mr. Cali, and Mr. Rolando discriminated against them on the basis of their sex in the setting of their salaries. Specifically, the Plaintiffs alleged that the Defendants used a reallocation system based upon annual performance evaluations to promote men to higher positions within the Archives Department than women and thus discriminated against them in violation of the equal protection clause of the fourteenth amendment. What the Plaintiffs failed to state was that they themselves had never applied for a promotion, never took the necessary examination to achieve a promotion, and were members of a collective bargaining unit since 1980 and received every union-negotiated increase and every service increase to which they were entitled.

■ In Count II of their complaint, the Plaintiffs alleged that Dr. Daly, Mr. Cali, Mr. Sorenson, and Manker Harris sexually harassed them. Specifically, they alleged that they were subjected to repeated unwanted and offensive sexual harassment by Mr. Harris and that the supervisors—the other three named Defendants—knew of this harassment yet failed to take any action to prevent it. To establish the Defendants' liability for sexual harassment the Plaintiffs would have had to prove that the harassment was sufficiently severe or pervasive to alter the condition of their employment and create an abusive working environment. *Bohen v. City of East Chicago, Indiana*, 799 F.2d 1180, 1186 (7th Cir.1986).

That the Plaintiffs were sexually harassed by Manker Harris is undisputed. The testimony at trial relating to the conduct by Manker Harris stands unrebutted and is in a single word OUTRAGEOUS! But the question at trial was whether the Plaintiffs had ever complained to their supervisors about Mr. Harris' conduct. (Prior to filing this suit the Plaintiffs filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Notably, their EEOC complaint failed to contain any mention of Mr. Harris' conduct!)

■ In Count III, the Plaintiffs alleged that Dr. Daly, Mr. Cali, and Mr. Herder retaliated against them because of their complaints of sex discrimination and the filing of a complaint with the EEOC. The alleged acts of retaliation included such things as transferring the Plaintiffs from their offices to the "stacks" where the records material is stored, removing their names from the Secretary of State's telephone directory, refusing to allow the Plaintiffs to receive personal visitors during working hours, setting specific lunch periods for the Plaintiffs while not setting such specific periods for other employees, and adjusting the temperature to an uncomfortable level in the Plaintiffs' offices.

Mr. Herder, the building manager who allegedly adjusted the temperatures, was granted summary judgment when no facts were brought forth establishing that he had any control whatsoever over the temperature in the building. The summary judgment motions filed by the remaining Defendants on all three counts were denied on the basis of the existence of genuine issues of material fact.

During trial it was revealed that the Plaintiffs kept a daily log of the activities of their fellow employees in the Archives Department. This log was in the form of notations on a desk calendar. Examples of such entries include the time that their fellow employees arrived at work, the time they took for lunch, the time they left work, and reports of conversations with their superiors. A complete chronological list of these picayune and petty complaints is attached to this opinion as an appendix for the court file.[1]

On April 8, 1981, Miss Heflin and Miss Tipps attended a sexual discrimination seminar at the court of claims office. It is interesting to note that Plaintiffs' complaints of sexual discrimination began almost immediately after their attendance at the sexual discrimination seminar. It is, of course, possible that the Plaintiffs did not realize they were being sexually discriminated against until someone told them so. Possible, but not likely. More likely, the Plaintiffs recognized the potent effect allegations of sexual discrimination could have in resolving their personal disputes and perceived grievances with their supervisors. No matter that their supervisors were not guilty of sexual harassment. No matter that allegations of sexual harassment, like allegations of criminal conduct, are never completely disproved and leave a negative residue that remains with an individual forever. The Plaintiffs now had the weapon they needed to attempt to force their supervisors to accommodate their imagined grievances. Thus, over the next *five years* the Plaintiffs kept a detailed log of all supposed grievances, perceived slights and insults, and the work records of their fellow employees. In addition, the Plaintiffs surreptitiously tape recorded their conversations with their supervisors!

Imagine working in an office where a fellow employee keeps detailed records of your every activity including the time you arrive for work, the time you leave and return from lunch, and the fact that you ate an after dinner mint at your desk. Such a situation is exacerbated when it occurs in a relatively small office composed of professional employees who are expected to work together. What odius and loathsome conduct!

The Plaintiffs' actions clearly created an abusive, shocking and grossly offensive working environment for their fellow employees. The Court agrees in aces, spades, and trumps with the jury's verdict in favor of the Defendants. Now that this lawsuit has ended, hopefully the Archives Department can pull itself together and get on with the business at hand.

CASE CLOSED (thank God!).

---

1. The daily logs in evidence contain 48 pages of typed entries which total 188 separate daily items. Those entries contain such information as:

   October 31, 1984  Roy to work at 7:45 a.m. Elaine to work at 8:04 a.m. Ron to work at 8:10 a.m.

   May 13, 1985  Mark to work 8:04. Gloria 7:35. Jerry 8:55. Sat and discussed golf with John from 8:55 to 9:03 a.m.

   June 4, 1985  Manker at Eleanor's desk, Mark brought back peppermint patty and ate it at his desk.

   June 20, 1985  Ruth admitted to me over the telephone that she had been eating at her desk and who cares. Marshal noted food in basket at Anna Vas. desk 1:30.

   November 25, 1985  70 degrees.  12:10 p.m. We caught Elaine Evans bringing her lunch back to the office. When Barb left at 4:40 p.m.—Anna V. had already left for the night.