**Gay C. RICCA–STROUD,
Plaintiff–Appellant,**

v.

**Francisco LOPEZ, Defendant–Appellee.**

No. 95 C 7189.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 21, 1996.

944

Robert E. Kenney, Jr., P.C., Oak Lawn, IL, for Plaintiff–Appellant.

Richard C. Leng, Leng Stowell Friedman & Vernon, Chicago, IL, for Defendant–Appellee.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

In November, 1993 the defendant, Dr. Francisco Lopez, filed for bankruptcy under Chapter 7 of the bankruptcy code. The plaintiff, Gay C. Ricca–Stroud, opposed Dr. Lopez' bankruptcy discharge arguing that Dr. Lopez failed to disclose or significantly undervalued several assets on his bankruptcy schedules. On October 18, 1995 the bankruptcy court, Judge Thomas James presiding, granted Dr. Lopez his discharge and entered judgment in his favor. Ms. Ricca–Stroud filed a timely appeal and raises six errors allegedly committed by the bankruptcy court which would justify reversing the decision: (1) denial of her motion to amend the complaint; (2) finding that the $500 valuation of the debtor's medical practice corporation was not a false oath; (3) ruling that the debtor was not responsible for the truthfulness of his oath on bankruptcy schedules where he relied on agents to prepare them but did not believe all of the valuations con-

tained therein; (4) ruling that the debtor did not make a false oath where he relied on his agents to value his assets but disclaimed responsibility for those valuations; (5) finding that the debtor did not demonstrate reckless intent rising to the level of a fraud violation under Section 727 of the Bankruptcy Code; and (6) relying on an outside document which was not in evidence. For the reasons set forth below, the order denying leave to amend is affirmed, but the case is remanded back to the bankruptcy court for further proceedings consistent with this opinion.

### Denial of Motion to Amend Complaint

 On August 29, 1995 Ms. Ricca–Stroud filed her motion to amend her complaint, and the bankruptcy court heard this motion on September 8th. The court denied her motion finding that it would have been "unfair at this late date" to permit Ms. Ricca–Stroud to amend her complaint when the trial was set to occur in approximately one month. Tr. of 9/8/95, at 25. Ms. Ricca–Stroud argues that she needed to engage in discovery to learn all of the pertinent facts in order to plead the new fraud count with particularity. Moreover, she claims that she could not file her motion any earlier due to the briefing schedule and resolution of a lengthy summary judgment motion. For those reasons she contends that the bankruptcy judge abused his discretion in denying her motion. I cannot agree.

A trial judge has broad discretion when deciding whether to grant leave to amend a complaint. *See J.D. Marshall Int'l v. Redstart, Inc.,* 935 F.2d 815, 819 (7th Cir.1991). A judge's decision on such a matter may be reversed only for an abuse of discretion because "[a] trial judge is particularly well-situated to judge the worthiness of a plaintiff's motion to amend his complaint, having been involved in the progress of the case throughout its development and having viewed first-hand the party's diligence or lack thereof." *Bohen v. City of East Chicago, Ind.,* 799 F.2d 1180, 1185 (7th Cir.1986). Although leave to amend is usually given

freely, it may be restricted where prejudice to a party or delay by a party are involved. *Id.* at 1184. Even if I might have arrived at a different conclusion than the trial judge, that fact does not mean that the trial judge abused his discretion. *Id.* at 1185.

In the instant case, the bankruptcy court indicated that it had difficulty with the timeliness of Ms. Ricca–Stroud's motion to amend. Tr. of 9/8/95, at 18, 25. Furthermore, the court seemed to indicate that Dr. Lopez would be prejudiced by the extra time and effort that would be necessary in order to answer the additional claim which Ms. Ricca–Stroud sought to include in her complaint. *Id.* at 13, 18. Though it would have been preferable for the court to articulate its reasoning on this issue with greater clarity, the procedural history of this case does support the court's decision to deny the motion.

Ms. Ricca–Stroud originally filed her complaint on June 9, 1994. On August 15, 1994 the bankruptcy court struck two of the claims for failure to plead them with sufficient particularity. In the ensuing year, the parties briefed and argued Dr. Lopez' motion for summary judgment, which ultimately was denied on June 30, 1995. During this time, the parties also engaged in discovery which permitted Ms. Ricca–Stroud to discover the facts she needed to replead her claims. Tr. of 9/8/95, at 17, 21. Yet during this entire time, Ms. Ricca–Stroud failed to move for leave to file an amended complaint. In fact, Ms. Ricca–Stroud waited for two months after the ruling on the summary judgment motion to file her motion for leave, despite the fact that she knew the facts relating to the issue and briefed them in her summary judgment responses. *Id.* at 21–22. In the hearing on this motion for leave, counsel for Ms. Ricca–Stroud merely stated that "I felt that we couldn't amend a complaint until the summary judgment motion was resolved." *Id.* at 22. Not only did counsel fail to offer an explanation for this statement, but even if I accept his statement, the fact remains that the motion was not filed until *two months after* the resolution of the summary judgment motion. Hence, the bankruptcy court

did not abuse its discretion in denying the motion to amend the complaint.

### Valuation of the Medical Practice

■ The parties have spilled much ink on the proper method by which Dr. Lopez' medical practice corporation should have been valued on his bankruptcy schedules. Dr. Lopez argues that the cost approach, which measures the liquidation value of the practice, is most appropriate because the practice would be liquidated and not sold as a going concern. Therefore, he claims that he did not make a false oath in swearing to that value in his schedules. In contrast, Ms. Ricca–Stroud contends that the practice should be valued as a going concern based on the income streams that had been generated in the past and that could be generated in the future. The bankruptcy court found Dr. Lopez' valuation method to be acceptable; therefore, he had not made a false oath. Without further factual development on this point, however, I cannot decide this issue.

During the pendency of this appeal, the Seventh Circuit decided *In re Prince*, 85 F.3d 314 (7th Cir.1996). *Prince* involved a physician and his wife who had filed for bankruptcy under Chapter 11 and had proposed that their estate be liquidated as part of the plan of reorganization.[1] As part of this plan, Dr. Prince was to retain his medical practice corporation, and he agreed to pay the equity value of it into a fund for the creditors of the estate. *Id.* at 316. Dr. Prince claimed that the equity value of the corporation was $7,500 based on the value of the physical assets. *Id.* The creditors committee's expert, however, placed the value of the corporation at $650,000 based on the value of Dr. Prince's goodwill and the capitalization of the cash flow likely to be generated from the corporation in the future. *Id.* at 317. The bankruptcy court accepted Dr. Prince's valuation, but the district court reversed, holding that the value of goodwill

must be included in the calculation. The Seventh Circuit affirmed the district court. *Id.* at 325.

In reaching its conclusion, the Seventh Circuit explained that liquidation value is appropriate only in those cases where a business is dissolving and it would not be appropriate where a business was expected to continue as a going concern. *Id.* at 320. The court further found that despite the lack of a non-compete agreement between Dr. Prince and his medical corporation, the $7,500 liquidation value could not be used. On this point, the court stated:

> The bankruptcy court's task was not to determine the present value of the stock as of some hypothetical future day when Dr. Prince left to compete with his own corporation, but to determine the value of the stock on the day the bankruptcy reorganization plan was confirmed. Present value is derived by discounting back a projected stream of future cash flows, and this stream of cash flow projections is based on the probability of possible future events. ... [Dr. Prince's leaving] was a possible event that affected the value of the stock: the higher the probability of him competing, the lower the expected future cash flows to the stock.... [T]he mere possibility that he might leave to compete with the corporation does not render the stock worthless any more than the possibility of fire destroying an uninsured house strips that house of every cent of its present value. What is important ... is the *probability* of a particular future event occurring.

*Id.* at 321. In the instant case, the status of Dr. Lopez' medical corporation as a going concern and the probability of Dr. Lopez leaving to compete with his own practice remain issues which need further development and clarification.

The bankruptcy court's decision to accept liquidation value as an adequate calculation

---

1. Although *Prince* involved a Chapter 11 bankruptcy, and the case at bar is a Chapter 7 bankruptcy, that fact does not make *Prince* inapplicable. Both cases involve a plan of liquidation,

and the analysis used by the Seventh Circuit concerning valuation is applicable regardless of the type of bankruptcy.

of Dr. Lopez' medical corporation was based largely on the court's conclusion that the corporation could not be a going concern if Dr. Lopez left to compete. Tr. of 10/18/95, at 547–48, 550. Yet as *Prince* makes clear, the possibility of Dr. Lopez leaving was just a factor to consider when calculating the future cash flows of the corporation. Whether or not he could or, in fact, would leave cannot be conclusive on the status of the corporation as a going concern. Hence, the bankruptcy court's task upon remand is twofold. First, it must decide whether Dr. Lopez' medical corporation could continue as a going concern. Second, if the corporation could continue as a going concern, it must determine what the present value of the stock would be given the probability of any future events and their impact on the value of the stock. If the second inquiry is necessary, I would commend to the bankruptcy court, in addition to any testimonial evidence or expert reports, the valuation method that was outlined in *Prince*. 85 F.3d at 319–324.[2]

*Reliance on Agents in Preparing Schedules*

■ Ms. Ricca–Stroud's third, fourth, and fifth grounds for reversal all may be addressed as a group. Each of the claims essentially relates to the question of whether or not Dr. Lopez made a false oath on his bankruptcy schedules by virtue of the fact that he relied on an agent to prepare them. The bankruptcy court found Dr. Lopez to be a credible witness concerning this matter, and the court did not find him to be reckless by accepting and signing for the valuations made by his agents. Tr. of 10/18/95, at 549. Ms. Ricca–Stroud argues, however, that these findings were in error because Dr. Lopez stated that he did not agree with the valuations, and a debtor simply cannot rely on the representations made by his agents when signing bankruptcy schedules.

■ This Court reviews factual findings of the bankruptcy court for clear error, and deference will be given to findings relating to credibility. *In re Lifschultz Fast Freight,* 191 B.R. 712, 715 (N.D.Ill.1996). I find no clear error in the bankruptcy court's factual findings on these issues. Contrary to Ms. Ricca–Stroud's contentions, Dr. Lopez may not have known whether any of his assets were undervalued on the schedules. According to his testimony, Dr. Lopez had no experience with appraising or valuing real estate and had no basis upon which to dispute the appraisals that had been done for this case. Tr. of 10/18/95, at 394–95, 397. Although Dr. Lopez may have stated that he did not agree with all of the amounts listed by his agent, Mr. Schindler, in the schedules, *Id.* at 319, 322, Dr. Lopez is not an accountant, real-estate appraiser or financial analyst. Dr. Lopez is a physician. He lacks the basic knowledge, let alone expertise, necessary to dispute the calculations. Hence, the record supports the bankruptcy court's factual findings and credibility determination with regard to the truthfulness of Dr. Lopez' oaths and his lack of reckless intent.

■ Furthermore, case law supports this conclusion. If a false statement is made on a bankruptcy schedule, a discharge will not be denied where that false statement is the result of mistake or inadvertence. *See North Community Bank v. Boumenot,* 106 B.R. 149, 152 (N.D.Ill.1989). Rather, a discharge will be denied on this basis only "when the cumulative effect of all falsehoods together evince a pattern of reckless and cavalier disregard for the truth." *In re Montgomery,* 86 B.R. 948, 957 (Bankr. N.D.Ind.1988), *rev'd on other grounds, In re Walters,* 176 B.R. 835, 875 (Bankr.N.D.Ind. 1994); *see also In re Bobroff,* 58 B.R. 950, 953 (Bankr.E.D.Pa.1986). In this case, no

2. Even if the bankruptcy court subsequently determines that Dr. Lopez' valuation method was incorrect, that finding does not necessitate a finding that Dr. Lopez also made a false oath on his bankruptcy schedules. Much like Dr. Prince, Dr. Lopez genuinely may have believed that his liquidation valuation was appropriate considering that fact that he did not intend to remain in the employ of his corporation after it was sold. However, if the facts demonstrate that Dr. Lopez intended to continue to work for or operate the corporation as a going concern, then the veracity of his oath may be in doubt. In any event, the valuation of that corporation is relevant to the amount of assets available to Dr. Lopez' creditors.

such pattern is apparent on the basis of the record. Dr. Lopez did leave one of his assets, a real estate investment trust worth approximately $2,000, off of his schedule. He claimed that he had forgotten about this asset and that as soon as his office manager reminded him, he directed her to tell Mr. Schindler who reported the asset to the bankruptcy trustee. On this basis, and I hardly find any room for disagreement, the bankruptcy court, by granting the discharge, concluded that this omission was not made knowingly or fraudulently.

■ With respect to the valuation of Dr. Lopez' property located in Chicago Ridge, Illinois, I also find no basis on which to disturb the bankruptcy court's determination of no reckless intent. Ms. Ricca–Stroud merely claims that because Dr. Lopez' believed this property to be worth more than the amount for which it was scheduled, his belief establishes that the property was in fact worth that amount. Yet she fails to note that Dr. Lopez also testified that independent appraisals of the property had revealed to him that the property was worth significantly less than what he believed it to be worth. Tr. of 10/18/95, at 395. Even if she had presented some other evidence tending to show that Dr. Lopez knew that the property was worth more than the scheduled amount, the Court is not clear that such evidence would rise to the level of a pattern of "reckless and cavalier disregard for the truth" that would require reversal.[3] Therefore, based on the evidence that actually was presented to the bankruptcy court, I find no clear error in the factual findings.

### Use of Document Not in Evidence

In questioning a witness and in issuing his decision, the bankruptcy judge referred to a consulting services practice aid from the American Institute of Certified Public Accountants. Tr. of 10/18/95, at 78–82, 546–48.

It is not clear to this Court exactly what purpose the document served. The bankruptcy judge appears to have used the document only for reference and to make some general comments on the methodology of valuing Dr. Lopez' medical corporation. Because I have remanded the case for further factual development on the issue of the valuation of the medical corporation, I need not reach the propriety of the judge's references to this document. Nevertheless, I would caution the bankruptcy judge not to refer to documents that are not in evidence in the case.

### Conclusion

For the foregoing reasons, the bankruptcy court's order denying the plaintiff's motion to amend her complaint is affirmed. As to her remaining five bases for error, all of them are without merit except for the issue relating to valuation of the medical corporation. On that issue, I find that further development of the factual record is necessary. Therefore, this case is remanded to the bankruptcy court for further proceedings consistent with this opinion.

---

**3.** Although Ms. Ricca–Stroud has argued that several other statements made by Dr. Lopez were false and thereby establish this pattern of recklessness, those statements all have to do with the valuation of the medical corporation. That issue has been addressed earlier in this opinion. Whether any of those statements were false and were made knowingly will have to be determined based upon the additional facts to be developed by the bankruptcy court upon remand.