**Christine Anne RUH, Plaintiff,**

v.

**Stephen B. SAMERJAN, Professor of Art, University of Wisconsin–Milwaukee; University of Wisconsin Board of Regents; University of Wisconsin System; University of Wisconsin–Milwaukee; Katherine Lyall, president, University of Wisconsin System; Clifford Smith, former chancellor, University of Wisconsin–Milwaukee; John Schroeder, chancellor, University of Wisconsin–Milwaukee; and Martha Bulluck, former affirmative action officer, University of Wisconsin–Milwaukee, Defendants.**

No. 92–C–278.

United States District Court,
E.D. Wisconsin.

March 1, 1993.

Christine Anne Ruh, pro se.

Nola J. Hitchcock Cross, Podell, Ugent & Cross, S.C., Milwaukee, WI, for defendant Stephen B. Samerjan.

James E. Doyle, Atty. Gen. by Paul L. Barnett, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, WI, for university defendants (i.e. all defendants except Stephen B. Samerjan).

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

Pro se plaintiff, Christine Anne Ruh, commenced this 42 U.S.C. § 1983 civil rights action on March 11, 1992. I granted her leave to proceed in forma pauperis on May 8, 1992. Ms. Ruh has twice received leave to amend her original complaint. Presently before the court are two motions to dismiss her amended complaint. One of these motions has been filed on behalf of all defendants except Professor Samerjan [collectively, the university defendants]. A separate motion to dismiss has been filed by Professor Samerjan solely on his behalf. Both motions will be granted.

## I. Motion to Dismiss Standard

In considering the pending motions to dismiss, I am obligated to accept as true all factual allegations contained in Ms. Ruh's amended complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Gillman v. Burlington Northern R.R. Co.,* 878 F.2d 1020, 1022 (7th Cir.1989). All of the defendants recognize that Ms. Ruh's complaint cannot be dismissed unless it appears " 'beyond doubt that the plaintiff can prove no set of facts in support of [her] claim[s] which would entitle [her] to relief.' " *Hughes v. Rowe,* 449 U.S. 5, 10 n. 7, 101 S.Ct. 173, 176 n. 7, 66 L.Ed.2d 163 (1980) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). *See also Wilson v. Civil Town of Clayton, Indiana,* 839 F.2d 375, 378 (7th Cir.1988).

Because Ms. Ruh is proceeding pro se, her complaint is entitled to a liberal construction. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Caldwell v. Miller,* 790 F.2d 589, 595 (7th Cir.1986). This is true notwithstanding the fact that she acknowledged in open court that she has had the assistance of an attorney in preparing her pleadings.

## II. Factual Background

In her complaint, Ms. Ruh states that she first enrolled as a student at the University of Wisconsin–Milwaukee [UWM] in September 1983 and was last enrolled there in May 1986. She alleges that she became acquainted with defendant Samerjan, a professor of art at UWM, and therefore a state employee, during the autumn of 1982. Ms. Ruh alleges that she and Professor Samerjan were "engaged in an intimate relationship" during a period from about May 28, 1983, to November 6, 1984. At that time, Ms. Ruh was a student in the school of fine arts at UWM.

In her original complaint she states that "It is my contention that this relationship was exploitive and abusive, and that it violated Board of Regents and UWM Policy and clauses in Prof. Samerjan's contract with the University concerning professional ethics and 'moral turpitude'." She also charges that Professor Samerjan "perpetrated this same and other harassing and discriminatory be-

haviors upon many female Art Dept. students."

In January 1986, during her last semester of enrollment at UWM, Ms. Ruh asserts that she took two art classes taught by Professor Samerjan. She avers that:

[D]efendant Samerjan would unprofessionally, inappropriately, and unfairly fail to attend a [sic] scheduled appointments, give her lower grades than plaintiff believed she deserved, and criticize and demean plaintiff in a manner that caused her personal injury; as a direct result of his conduct during this time period, plaintiff was forced to drop out of defendant Samerjan's courses on or about March 18, 1986. Defendant Samerjan's actions against plaintiff were in retaliation for prior complaints she made which were directed to him with respect to the intimate relationship between plaintiff and defendant Samerjan, including particularly a letter which plaintiff sent to defendant Samerjan during or about the fall of 1985.

Ms. Ruh alleges that the letter she sent to Professor Samerjan complained about his inappropriate conduct towards her and "how she had been injured by conduct similar to that he had used to injure other women similarly situated to plaintiff."

Ms. Ruh next alleges that she first complained about Professor Samerjan in June 1986. She brought her complaint to the attention of Leslie Vansen, the UWM art department chairperson. Ms. Ruh asserts that she subsequently filed a formal complaint in October 1986 with Żaida Geraldo—a university affirmative action officer. Ms. Ruh charges that the complaint was unfairly and discriminatorily disposed of in January 1987 with a pronouncement by a Ms. Fawcett, a personnel director in the chancellor's office of UWM, that "everything has been taken care of." Ms. Ruh adds, without detail or dates, that she "attended a meeting including Clifford Smith, former UWM chancellor concerning these matters."

Ms. Ruh further alleges that in December 1987 she filed a second complaint which was submitted to the chair of UWM's sexual harassment grievance committee, Dr. Suzanne Waller. She received a response concerning this complaint from defendant Martha Bulluck which stated "that it was determined that plaintiff's allegations did not meet the time requirements for an individual case." Ms. Ruh avers that she followed up on her complaints in early 1990 and received further correspondence on May 14, 1990, from Ms. Bullock, on behalf of defendant Chancellor John Schroeder, stating, again, that "her complaint was untimely."

Ms. Ruh asserts that during 1991 she once again complained about Professor Samerjan's behavior. She states that about June 18, 1991, she received correspondence from "defendant Chancellor Schroeder indicating that during the relevant times, defendant Samerjan did not violate plaintiff's rights as the defendant UWM policy did not prohibit consensual relationships between instructors and students."

As a result of her inability to obtain a favorable resolution of her complaints from the university defendants concerning Professor Samerjan's conduct towards her, Ms. Ruh asserts that:

[H]er Fourteenth Amendment rights to equal protection were violated by defendants in their failure to enforce Title IX regulations by wilfully losing papers pertaining to her complaints, failing to conduct timely, full, and fair investigations to resolve her complaints, by failure to maintain accurate records; utilizing inappropriate or improperly communicated procedures; etc.

Ms. Ruh also avers that she has suffered negligent or intentional infliction of emotional distress as a result of Professor Samerjan's abusive behavior towards her and the university defendants' failure to respond adequately and promptly to her complaints.

In her second amended complaint Ms. Ruh alleges that on October 19, 1990, Professor Samerjan read documents from her December 1987 complaint, filed with the UWM sexual harassment grievance committee, to his colleagues at an executive committee meeting of the UWM art department. Ms. Ruh states that she believes Professor Samerjan's act of reading her December 1987 complaint constituted "another act of discrimination and harassment against her."

As relief, Ms. Ruh seeks compensatory damages against all defendants jointly and severally for "mental anguish, emotional distress and humiliation." She also asks for punitive damages for "any findings of deliberate and wilful misconduct against the statutory and constitutional rights of plaintiff."

### III. The Claims for Relief

Liability under 42 U.S.C. § 1983 requires "proof that '(1) defendants acted under color of state law, (2) defendants' actions deprived plaintiff of her rights, privileges or immunities guaranteed by the Constitution, and (3) defendants' conduct proximately caused plaintiff's deprivation.'" *Volk v. Coler*, 845 F.2d 1422, 1430 (7th Cir.1988) (citing *Webb v. City of Chester, Illinois*, 813 F.2d 824, 828 (7th Cir.1987)).

Before considering the motions to dismiss, I believe it will be helpful to delineate the constitutional claims that Ms. Ruh seems to be setting forth in her complaint. Her claims are given numbers in this decision, but such numbers are not used in the plaintiff's pleadings.

Ms. Ruh's complaint is unclear as to whether she is suing Professor Samerjan, Ms. Lyall, Mr. Smith, Mr. Schroeder and Ms. Bulluck in their official capacities or in their individual capacities. She seeks money damages, and to that extent it would appear she intends to sue these persons in their individual capacities. *See Abdul–Wadood v. Duckworth*, 860 F.2d 280, 287 (7th Cir.1988) ("Given that Abdul–Wadood drafted his complaint, his claim for damages is sufficient to alert the court and the defendants that he may be suing them in their individual capacities."), *overruled on other grounds, Wallace v. Robinson*, 940 F.2d 243 (7th Cir.1991). On the other hand, "an official capacity suit will be presumed when the indicia of an official policy or custom are present in the complaint." *Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir.1991).

Liberally construed, the plaintiff's pleadings suggest that her claims directed at the individually named defendants stem from her belief that the University of Wisconsin Board of Regents, the University of Wisconsin System and UWM have a policy or custom of sex discrimination against women. Thus, Ms. Ruh seems to be suing the individually named defendants in their official capacities. Consequently, I will construe Ms. Ruh's complaint as naming Professor Samerjan, Ms. Lyall, Mr. Smith, Mr. Schroeder and Ms. Bulluck in *both* their official and individual capacities.

Ms. Ruh's first claim [Claim # 1] appears to be that her intimate relationship with Professor Samerjan constituted sexual harassment, amounting to sex discrimination, in violation of the equal protection clause. *See King v. Board of Regents of Univ. of Wisconsin System*, 898 F.2d 533, 537 (7th Cir.1990); *Volk*, 845 F.2d at 1431; *Bohen v. City of East Chicago, Indiana*, 799 F.2d 1180, 1185 (7th Cir.1986). *See also Doe v. Taylor Indep. School Dist.*, 975 F.2d 137, 149 (5th Cir.1992) (noting that although most cases of sexual harassment occur in the work place, "there is no meaningful distinction between the work environment and school environment which would forbid such discrimination in the former context and tolerate it in the latter.").

Ms. Ruh's next claim [Claim # 2] is that after her intimate relationship with Professor Samerjan ended, he sexually harassed her, and thus sexually discriminated against her, in violation of the equal protection clause, during the January to March 1986 period when she was enrolled in his art classes. *See King*, 898 F.2d at 537. Another claim [Claim # 3] concerns the October 19, 1990, incident in which Professor Samerjan allegedly read from Ms. Ruh's December 1987 complaint at an executive committee meeting of the UWM art department. Ms. Ruh would have the court treat this claim also as one for sexual harassment amounting to sex discrimination in violation of the equal protection clause. Next, Ms. Ruh asserts a pendent state claim [Claim # 4] for negligent or intentional infliction of emotional distress stemming from Professor Samerjan's alleged retaliatory behavior towards her after their intimate relationship terminated.

The above four designated claims implicate only Professor Samerjan. Ms. Ruh's remaining claims concern the university defendants. Claim # 5 charges, generally, sex discrimination violative of the equal protection clause stemming from the alleged mishandling by the university defendants of her numerous

complaints about Professor Samerjan filed throughout the period from June 1986 to June 1991. Claim # 6 avers that during the same June 1986 to June 1991 period, the university defendants failed to comply with Title IX in that they mishandled her complaints about Professor Samerjan. Her final claim [Claim # 7] is a pendent state claim for the negligent or intentional infliction of emotional distress stemming from the alleged mishandling of her complaints by the university defendants.

## IV. Analysis

■ Ms. Ruh's cause of action rests on a foundation with a variety of major weaknesses. The statute of limitations for 42 U.S.C. § 1983 actions arising in Wisconsin is Wisconsin's six-year statute of limitations for injury to character or other rights. *See Kuemmerlein v. Board of Educ. of the Madison Metro. School Dist.*, 894 F.2d 257, 259 (7th Cir.1990); *Gray v. Lacke*, 885 F.2d 399, 407–09 (7th Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). This statute provides that:

> An action to recover damages for an injury to the character or rights of another, not arising on contract, *shall be commenced within 6 years after the cause of action accrues*, except where a different period is expressly prescribed, or be barred.

Wis.Stat. § 893.53 (1991–92) (emphasis added).

■ With regard to her claim of sexual harassment against Professor Samerjan—in what I have referred to as Claim # 1—it is clear that such a claim is time-barred. The alleged discriminatory acts in Claim # 1 occurred between May 28, 1983, and November 6, 1984. She filed her civil rights action on March 11, 1992; thus, claims arising before March 11, 1986, are barred by the six-year statute of limitations. The plaintiff has set forth no facts in her pleadings to suggest that the statute of limitations in respect to Claim # 1 should be tolled pursuant to either the doctrine of equitable estoppel or equitable tolling. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991).

■ Another weakness in the foundation of the plaintiff's cause of action relates to her failure to have alleged compliance with Wisconsin's notice of claim statute. This statute provides:

> [N]o civil action or civil proceeding may be brought against any state officer, employee or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employe's or agent's duties ... unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim....

Wis.Stat. § 893.82(3) (1991–92). Compliance with this statute is jurisdictional and failure to give written notice to the attorney general is fatal to commencing a civil action against a state employee. *Ibrahim v. Samore*, 118 Wis.2d 720, 726, 348 N.W.2d 554 (1984).

■ Still another deficiency in Ms. Ruh's claim for relief stems from the fact that her suit against the state agencies and the state officials in their official capacities for money damages are barred because states, state agencies, and state officials sued in their official capacity are not considered "persons" for purposes of 42 U.S.C. § 1983 and thus are not subject to liability under that statute. *Howlett v. Rose*, 496 U.S. 356, 365, 110 S.Ct. 2430, 2437, 110 L.Ed.2d 332 (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). Insofar as defendants Samerjan, Lyall, Smith, Schroeder and Bulluck are sued in their official capacities, the plaintiff's claims against them must be dismissed.

■ Having alluded to some of the flaws in the plaintiff's cause of action, I now turn to what I deem the most serious (and fatal) deficiency in Ms. Ruh's lawsuit: It simply fails to state a valid claim of sexual harassment or discrimination based on gender.

At first blush it would seem that a female student, such as Ms. Ruh, who is mistreated by a male teacher at the end of a romance might have a claim for sexual harassment or discrimination. However, on closer examination, it becomes clear that the alleged misconduct of Professor Samerjan ("inappropriate," "unprofessional," failure to attend ap-

pointments, giving her lower grades, demeaning her) are all personal matters and are not gender related. The professor's conduct, assuming it took place, did not stem from his discriminatory action against "women" but, rather, is the way he ended their love affair. Therefore, Claims #2 and #3 also cannot survive Professor Samerjan's motion to dismiss.

Ms. Ruh acknowledged that "an intimate relationship" with Professor Samerjan lasted almost a year and a half. There is no question but that it was a consensual matter with no suggestion in any of her three complaints that Professor Samerjan made unwelcome advances or exacted a quid pro quo from her during their affair.

In *King v. Board of Regents of Univ. of Wisconsin System,* 898 F.2d 533 (7th Cir. 1990), the court of appeals for the seventh circuit summarized a squarely applicable ruling from *Huebschen v. Dept. of Health and Social Services,* 716 F.2d 1167 (7th Cir.1983), in which the sexes were reversed from the case at bar (the plaintiff was a male and the defendant was the plaintiff's female superior), as follows:

> [W]e found that the claim of sexual discrimination had not been proven because the plaintiff was merely a "jilted lover;" the defendant, a female supervisor, harassed the plaintiff not because he was a male but because he had spurned her. On this basis, we held that the defendant's actions were the result of a personal vendetta and not sexually discriminatory.
>
> . . . .
>
> ... [D]isparate or harassing treatment is not sexually discriminatory if there is a cause other than gender. If, as a purely personal matter, a boss and a particular employee are not compatible, it would not be sexually discriminatory to harass the employee on that basis. We echoed this them in *Bohen* where we stated that "it is a good defense, however, if the employer can show that the harassment suffered by the plaintiff was directed at the plaintiff because of factors personal to her and not because she is a woman." 779 F.2d at 1187 (citing *Huebschen*). This logic clearly retains vitality: the equal protection

clause does not prohibit all negative employment actions against women.

*King,* 898 F.2d at 538–39.

Ms. Ruh notes that Professor Samerjan had affairs with other women. In my opinion, this does not warrant a conclusion that his actions in regard to Ms. Ruh were abusive to women in general or to women as a class.

■ There is also a fatal flaw existing with regard to her claims [Claims #5 and #6] against the university defendants. There is no support in any of the plaintiff's pleadings or in her briefs to justify a finding that the university defendants would have acted differently if a female, rather than a male, were the one charged with misconduct. The gravamen of the plaintiff's allegations relating to Claim #5 rests in her suggestion that her complaints about Professor Samerjan were mishandled by the university defendants. However, Ms. Ruh has not set forth any facts to suggest that the university defendants intentionally discriminated against her because of her membership in a protected class. *See Bohen v. City of East Chicago, Indiana,* 799 F.2d 1180, 1186 (7th Cir.1986). A careful examination of the plaintiff's pleadings fails to disclose any suggestion that her complaints to the university defendants about Professor Samerjan's conduct were intentionally mishandled because of either party's gender. Indeed, she acknowledges that she received a response from the university defendants as to every one of her complaints. While she did not get the responses she desired, and in some cases the responses were delayed, there is nothing to support a claim of intentional sexual discrimination by the university defendants in violation of the equal protection clause.

■ There is an additional problem with Ms. Ruh's Title IX claim—Claim #6. A statute "such as Title IX, which contains its own remedies and is implemented through its own procedural scheme, does not permit bypassing what Congress has written by going directly to Section 1983." *Bougher v. Univ. of Pittsburgh,* 713 F.Supp. 139, 146 (W.D.Pa. 1989), *aff'd on other grounds,* 882 F.2d 74 (3d Cir.1989). *See also Pfeiffer v. School Board*

**1332**

*for Marion Center Area,* 917 F.2d 779, 789 (3d Cir.1990); *Mabry v. State Board for Community Colleges,* 597 F.Supp. 1235, 1239 (D.Colo.1984), *aff'd,* 813 F.2d 311 (10th Cir. 1987). Therefore, irrespective of the factual deficiencies of Ms. Ruh's pleadings, she is legally barred from maintaining her Title IX claim as part of her 42 U.S.C. § 1983 lawsuit.

With regard to the pendent state claims [Claims # 4 and # 7], I have already noted the flaw stemming from the plaintiff's failure to comply with the notice of claim statute of the state of Wisconsin. Even without that basis for dismissing the pendent state claims, this court would decline to exercise such jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), which provides that:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection [1367](a) if ... the district court has dismissed all claims over which it has original jurisdiction.

Since all of Ms. Ruh's federal claims, Claims # 1, # 2, # 3, # 5 and # 6 are to be dismissed, I believe that the court should also refuse to exercise jurisdiction over her two pendent state claims [Claims # 4 and # 7].

I conclude that both Professor Samerjan's motion to dismiss and that of the university defendants must be granted.

### ORDER

Therefore, IT IS ORDERED that Professor Samerjan's motion to dismiss be and hereby is granted, with costs.

IT IS ALSO ORDERED that the university defendants' motion to dismiss be and hereby is granted, with costs.

IT IS FURTHER ORDERED that this action be and hereby is dismissed, with prejudice.