165 F.3d 565
 79 Fair Empl.Prac.Cas. (BNA) 42, 75 Empl.
Prac. Dec. P 45,744
Heather GARRISON, Plaintiff-Appellant,
v.
Lieutenant Tom BURKE, Individually and in his official
capacity as Lieutenant of the Rockford Fire Department, City
of Rockford, a municipal corporation, William Baylor, Frank
Genestra, Ronald Graw, Edward Archer, Steve Leighty, and
Lyndell Pond, Individually and in their official capacity as
officials of the Rockford Fire Department, Defendants-Appellees.
 No. 97-1499.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 7, 1997.
Decided Jan. 14, 1999.
 
 Edward F. Diedrich (argued), DeKalb, IL, for Plaintiff-Appellant.
 Daniel J. Cain, Sreenan & Cain, Kerry F. Partridge (argued), City of Rockford, David A. Caulk, Rockford, IL, for Defendant-Appellee.
 Ronald N. Schultz, Douglas P. Scott, Kerry F. Partridge (argued), City of Rockford, Daniel J. McGrail, Rockford, IL, for Defendants-Appellees.
 Before COFFEY, FLAUM and DIANE P. WOOD, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 The plaintiff-appellant Heather Garrison, a firefighter with the City of Rockford, Illinois, Fire Department, filed a sexual harassment suit in the Northern District of Illinois, naming as defendants the City of Rockford, the officials of the Rockford Fire Department, and a lieutenant in the department, Tom Burke. On January 27, 1997, the trial court granted summary judgment to the defendants, ruling that much of the allegedly harassing conduct occurred outside the statute of limitations, and further holding that the plaintiff's allegations not barred by the statute of limitations failed to state a claim. Garrison appeals the trial court's ruling. We affirm.
 
 I. BACKGROUND
 
 2
 Procedural History.
 
 
 3
 On May 15, 1991 Garrison filed her complaint, contending that she was harassed by Lieutenant Burke on nine occasions over a period of some four and a half years, from October 1986 to February 1991. Furthermore, the plaintiff alleges that the City of Rockford and the defendant officials of the Rockford Fire Department ("the Fire Officials") failed to protect her from this sexual harassment. She cited federal claims relating to equal protection, privacy, and due process, as well as state claims relating to intentional infliction of emotional distress, assault and battery, invasion of privacy, breach of implied contract, and violations of the Illinois State Constitution. See I LL. C ONST. OF 1970, art. 1, §§ 2 and 17; 68 ILCS § 1-101 et seq. The City and the Fire Officials jointly moved for a more definite statement pursuant to Fed.R.Civ.P. 12(e), seeking greater clarification as to exactly which defendant was accused of violating which law, and the plaintiff voluntarily filed an amended complaint. After the City and Fire Officials renewed their motion for a more definite statement, the plaintiff filed a second amended complaint on August 2, 1991. In each of the complaints Burke and the named Fire Officials were sued in both their individual and their official capacities. The trial judge, in orders dated February 8, 1993, and January 5, 1994, dismissed all the individual capacity claims. On December 6, 1996, the Fire Officials and the City of Rockford jointly moved the trial court to grant summary judgment, arguing that the statute of limitations barred much of the sexually harassing conduct alleged by the plaintiff and that, furthermore, the evidence was insufficient to sustain any of the plaintiff's claims. On December 31, 1996 Burke filed his own motion for summary judgment, relying on the statute of limitations argument that his codefendants had presented, and adopting the Local Rule 12(M) Statement of Uncontested Facts the City had filed. The plaintiff filed a single response to both summary judgment motions, but her response was deficient in that the Statement of Uncontested Facts she submitted along with her response violated the local rules by failing to make any citations to the record.[1] The City filed, and the court granted, a motion to strike her Rule 12(N) statement. As a result, the judge, when deciding the defendants' summary judgment motions, considered only the defendants' jointly adopted Rule 12(M) Statement of Facts. See Flaherty v. Gas Research Inst., 31 F.3d 451, 453 (7th Cir.1994) (where the nonmoving party fails to comply with Rule 12(N) by making "specific references" to the record, the court may deem the facts contained in the moving party's Rule 12(M) statement to be admitted).[2]
 
 
 4
 According to the defendants' Rule 12(M) Statement, there were nine separate occasions, between October 1986 and February 1991, where Garrison allegedly had unwanted contact with Burke. Garrison concedes that the statute of limitations is two years, see 735 ILCS 5/13-202, and that many of the incidents occurred more than two years before she filed her complaint on May 15, 1991, but she argues that the series of events constituted a continuing violation, a contention which we examine after delineating the nine alleged encounters.
 
 
 5
 1. October 31, 1986. Garrison was assigned to City of Rockford Fire Station No. 7 with Lieutenant Burke, and on October 31, 1986 Burke requested that she accompany him to the basement of the station to add salt to the water softener. Garrison claims that, while she was alone with Burke, he attacked her, ripped open her work shirt, placed his hands on her breasts with force causing her pain, and kissed her on the lips. Garrison states that she resisted by digging her fingernails into his face, and he backed away. She immediately ran upstairs into the women's bathroom, and shortly thereafter, exited and walked into the hallway, only to encounter Burke again. At this time Burke threw open the door from the basement and again forcibly grabbed her breasts and kissed her. Garrison pushed him away and ran to a "watch desk," where she called Fire Captain Ron Graw, and informed him that she had been attacked by Lieutenant Burke. Graw reported the assault to the Chief of the Rockford Fire Department, William Baylor, and subsequently advised Garrison that Baylor had decided to transfer her. The transfer was not to take place immediately but was to take effect January 1, 1987. Garrison did not object to the delay because she worried that an immediate transfer might attract the curiosity of her fellow fire fighters, and (as she stated in her deposition) she did not want anybody to know what had happened except her chain of command. Garrison did not notify the police of the assault, and never sought disciplinary action against Burke until 1991, after discussing the attack with a union steward.
 
 
 6
 2 and 3. Two days between November 1, 1986 and December 31, 1986 (unspecified). Garrison alleged that on two separate occasions in 1986, after the initial assault and before her transfer, Burke inappropriately walked into the non-officers' dormitory sleeping area, where Garrison and at least one other fire fighter[3] were sleeping. Burke did not say anything but essentially walked in, turned around, and walked out. Garrison at no time reported this unusual conduct on the part of Burke to her superiors.
 
 
 7
 4. January 30, 1987. Garrison further alleged that, on January 30, 1987, at approximately 8 a.m., while she was off duty and at home, she looked out of her window and observed Burke "walking around with his hands on my car." She telephoned Captain Graw and told him what had happened and asked him to tell Burke to leave her alone.
 
 
 8
 5. Unspecified day in 1987. Garrison alleged that, while she was on an emergency call assignment, she knelt down to pick up a stretcher, and Burke came up and stood directly behind her in such a way that, when she stood up, her back struck Burke's chest. Neither Burke nor Garrison said a word to the other at this time, and Garrison did not report Burke's conduct to anyone.
 
 
 9
 6. May 15, 1989. During a break at a fire scene, Burke said to Garrison "I want to take you out for coffee." Then, stating, "You have a bug on your cheek," he reached out and brushed her cheek. Shortly thereafter, according to Garrison, Burke "put his hand on the front part of my thigh, came up to the crotch area, came up my stomach, over my breasts, across my shoulder, and then he just walked away without saying a word." Garrison asked two of her fellow fire fighters (one of whom witnessed the improper touching) to speak with her supervisor, Chief Frank Genestra, to request that Burke be "confronted" regarding his conduct. Genestra did confront Burke, and advised him that if he did anything else to Garrison, he would be terminated from the department. Garrison did not pursue the matter further.
 
 
 10
 7. Unspecified Day in February 1990.[4] Garrison was assigned for one day in February of 1990 to Station No. 7 due to a manpower shortage. She knew that Burke was scheduled to be working the following shift at Station No. 7, but she did not request that she be relieved of this assignment. Burke reported for duty before Garrison finished her shift, but the two were never in the same room.
 
 
 11
 8. April 28 or 29, 1990. When Garrison reported for work on the morning of April 28 or 29, she was directed to go to the training academy to assist in the testing of new recruits' physical agility. She did not know that Burke was also assigned to the training academy that day. As Garrison walked into the building, she allegedly saw Burke. The two did not make eye contact, nor did they speak. Later that day she again saw Burke, standing next to Chiefs Genestra and Archer. She turned around and walked away so as to avoid Burke. Garrison never told any supervisors that she was upset about seeing Burke on this occasion.
 
 
 12
 9. Unspecified Day in February 1991. Garrison was again assigned to substitute for the day at Station No. 7. Even though she knew that Burke was assigned to work the shift after hers, she reported to the station without informing her supervisors that she was worried about coming into contact with Burke. However, after arriving at Station No. 7, she telephoned a superior, Deputy Chief Archer, and told him that she did not want to spend the day at the station. Deputy Chief Archer told her that she should stay, but he also informed her that she could call the fire fighter scheduled to relieve her, to see if he could come in early so she would not have to see Burke at the shift change. Garrison called the fire fighter, but he would not agree to come in early, so Garrison called Deputy Chief Archer back and told him that she had been unable to arrange early relief. Deputy Chief Archer's response was, "We're not going to shut down any company just so you can get out of there and see [sic] Tom Burke." Plaintiff stayed at Station No. 7 for her shift. Her relief came to work early, by approximately 15-20 minutes, and Garrison immediately left, passing Burke in the hallway as he arrived. The two made brief eye contact, but neither stopped nor said anything to the other. This, according to the allegations of the complaint, was the last contact Garrison had with Burke.
 
 II. ANALYSIS
 
 13
 Garrison raises two issues on appeal: (A) whether the district court erred in ruling that much of the alleged conduct was barred by the statute of limitations; and (B) whether the district court erred when granting summary judgment to the City on Garrison's equal protection claim.
 
 
 14
 A. Statute of Limitations. Since the complaint was filed on May 15, 1991, and the statute of limitations is two years, see 735 ILCS 5/13-202, the trial court ruled that all conduct prior to May 15, 1989 was time-barred. Garrison challenges this ruling and argues that Burke's pattern of conduct between October 1986 and February 1991 constituted a continuing violation against her, thus allowing that all of her allegations be considered within the statute of limitations. We review the trial judge's statute of limitations decision de novo. See Jones v. General Elec. Co., 87 F.3d 209, 211 (7th Cir.1996).
 
 
 15
 "The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period. For purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period." Selan v. Kiley, 969 F.2d 560, 564 (7th Cir.1992). In Galloway v. General Motors Parts Operations, 78 F.3d 1164 (7th Cir.1996), we placed limitations on the circumstances in which acts of sexual harassment may be linked together to defeat the statute of limitations. Acts that fall outside the statute of limitations may be joined to an act within the statute only if a reasonable person in the position of the plaintiff would not have known, at the time the untimely acts occurred, that she had a claim; rather, she could only tell by hindsight that the untimely acts represented the early stages of harassment. See id. at 1166 (sexual harassment, in its early stages, "may not be diagnosable as sex discrimination, or may not cross the threshold that separates the nonactionable from the actionable ....") (citation omitted). See also Moskowitz v. Trustees of Purdue Univ., 5 F.3d 279, 281-82 (7th Cir.1993) ("If it is only with the benefit of hindsight, after a series of discriminatory acts, that the plaintiff can realize that he is indeed a victim of unlawful discrimination, he can sue in regard to all of the acts provided he sues promptly after learning their character.... If, however, he knows or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed him, he may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one."). Furthermore, in order for various acts of sexual harassment to be joined together into a single claim (for the purposes of the statute of limitations) the various acts must be reasonably close to each other, in time and circumstances, for as this court has held, "[a]cts of sexual harassment so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations." Id., citing Koelsch v. Beltone Electronics Corp., 46 F.3d 705, 707 (7th Cir.1995).
 
 
 16
 Applying the teachings of Galloway to the case before us, the October 1986 attack in the basement, which took place outside the statute of limitations, may not be linked together with the subsequent incidents since, as the district court stated, "any reasonable person in [plaintiff's] situation would have realized that [Garrison] had a substantial claim under the law once the City failed to immediately take remedial action." Because Garrison did not require the light of subsequent events in order to discern that she had a claim, the assault may not be joined with Burke's later actions to defeat the statute of limitations.
 
 
 17
 The trial court's second reason for finding that Burke's actions did not constitute a continuing violation was that Burke's actions did not "reinforce each other" (Galloway, 78 F.3d at 1166) since there was a two-year gap between, on the one hand, the encounters which took place outside the statute of limitations, and, on the other hand, the encounters which fall within the statute of limitations: "[a]fter the 'incident' at the accident scene where plaintiff backed into Lt. Burke (the last incident falling outside the statute of limitations), plaintiff had no contact with Lt. Burke for approximately two years. This two-year lull in the alleged harassment is too significant of a break [in time] to permit a finding that plaintiff was subjected to a pattern or continued series of harassing acts." Garrison v. Burke, No. 91 C 20150, 1997 WL 148048 (N.D.Ill., January 27, 1997).
 
 
 18
 The district court's ruling that the two-year lull precludes a continuing violation finds support in our decision in Selan, supra. In that case, the plaintiff, a certified social worker, alleged that four acts of her employer constituted a continuing age discrimination violation: a transfer/demotion in May 1985; a removal of individual psychotherapy responsibilities in late 1985; a removal of clinical supervisory duties in October 1987; and a removal of privileges in July 1988. We affirmed the district court's finding that these four separate acts could not be linked together, stating that "[a]lmost two years passed between the late-1985 removal of individual psychotherapy duties and the October 1987 removal of clinical supervisory duties. This considerable separation weighs heavily against finding a continuing violation." 969 F.2d at 566. Just as the two-year gap in Selan precluded a finding of continuing violation since the plaintiff in that case was not subject to "continual unlawful acts," see Diliberti v. United States, 817 F.2d 1259, 1264 (7th Cir.1987) ("[a] continuing violation is occasioned by continual unlawful acts ...") (quotation omitted), the fact that two years passed during which Burke did not harass Garrison demonstrates that Burke's actions were not a continuing violation but rather were "merely discrete, isolated, and completed acts which must be regarded as individual violations." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 446 (7th Cir.1994) (quotation omitted). We thus affirm the district court's decision that there was no continuing violation.
 
 
 19
 B. Summary Judgment. We review the trial court's summary judgment decision de novo, see Thiele v. Norfolk & W. Ry. Co., 68 F.3d 179, 181 (7th Cir.1995), and in doing so we undertake "an independent review of the record, as reflected in the rule 12(M) and 12(N) filings, to see if the [summary judgment] decision was correct." Sledd v. Lindsay, 102 F.3d 282, 285 (7th Cir.1996) (citations omitted).
 
 
 20
 In Garrison's § 1983 equal protection claim against the City, she alleged that the City discriminated against her based on gender when it failed to take adequate remedial or disciplinary action against Burke. We are unconvinced by her claim since the only time within the limitations period where Burke arguably acted improperly was at the fire scene on May 15, 1989 (when Burke allegedly touched her indecently), and the City took swift and decisive action in response to Garrison's complaint by warning Burke that if he continued his inappropriate behavior toward Garrison his employment would be terminated. Garrison never expressed dissatisfaction with this result. As for the other allegations which fall within the statute of limitations period, Garrison merely contends that she was in the vicinity of Burke, and this clearly does not rise to the level of sexual harassment. Furthermore, even if this did rise to the level of sexual harassment, Garrison usually did not report to her superiors that she was uneasy about seeing Burke. The City authorities certainly cannot be held responsible for a failure to act, when Garrison chose not to inform the City about her concerns. See Zimmerman v. Cook County Sheriff's Dep't, 96 F.3d 1017, 1019 (7th Cir.1996) (when "the only possible source of notice to the employer ... is the employee who is being harassed, she cannot withstand summary judgment without presenting evidence that she gave the employer enough information to make a reasonable employer think there was some possibility that she was being sexually harassed.") (citations omitted).
 
 
 21
 Garrison further claims that, even if the City itself did not violate her equal protection rights, Burke's conduct should be attributed to the City. To succeed on such a claim, Garrison would need to demonstrate that Burke, when harassing Garrison, was acting pursuant to a City custom or policy. See Bohen v. City of East Chicago, Indiana, 799 F.2d 1180, 1188 (7th Cir.1986) ( "Under § 1983, actions of a state entity's employees are attributable to the state entity itself if those actions are in furtherance of the entity's 'policy or custom.' ") (citations omitted); Jones v. City of Chicago, 787 F.2d 200, 203 (7th Cir.1986) ("[A] plaintiff may establish municipal liability for deprivations of a constitutionally protected interest if she can show the existence of a policy or custom and a sufficient causal link between the policy or custom and the constitutional deprivation."), citing Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658, 690-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
 
 
 22
 In Monell, female employees of the City of New York brought suit challenging the municipal policy which required pregnant employees to take unpaid leaves of absence before the absences were medically necessary. See 436 U.S. at 660-61, 98 S.Ct. 2018. The Supreme Court, after holding that municipalities are susceptible to liability under § 1983, see id. at 690, 98 S.Ct. 2018 ("Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies."), placed a limitation on such potential liability: municipalities cannot be held liable for § 1983 claims under a theory of respondeat superior (id. at 691, 98 S.Ct. 2018); rather, the municipality is only responsible for its employees' actions if taken pursuant to an unconstitutional policy or custom of the municipality itself. See id. at 690, 98 S.Ct. 2018. "Policy" or "custom" can take one of three forms:
 
 
 23
 (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.'
 
 
 24
 Baxter v. Vigo County School Corp., 26 F.3d 728, 734-35 (7th Cir.1994) (citations and internal quotations omitted).
 
 
 25
 The district court applied Baxter to the facts before us and concluded that Burke did not act pursuant to a City policy. Initially, Garrison presented no evidence that Burke, when allegedly touching Garrison in an improper manner on May 15, 1989, was acting pursuant to any express policy adopted by the City. Secondly, the record is void of evidence demonstrating that the City customarily or habitually ignored complaints of sexual harassment (Garrison was not even aware of any harassment incidents within the Rockford Fire Department besides her own);[5] and, Garrison has failed to present any evidence that a "final policy-making authority" deliberately chose to ignore her complaints of sexual harassment.[6] Her claim thus fails to satisfy the Monell requirement that the City deliberately deprived her of her rights.
 
 AFFIRMED
 
 
 [1]
 Northern District of Illinois General Rule 12(N)(3)(a) provides, in relevant part, "[e]ach party opposing a motion filed pursuant to F.R. Civ. P. 56 shall serve and file ... a response to each numbered paragraph in the moving party's [Rule 12(N)] statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon ...." (emphasis added)
 
 
 [2]
 The plaintiff on appeal has not challenged the district court's decision to strike her Rule 12(N) Statement; thus, on appeal we review only the facts as contained in the defendants' Rule 12(M) Statement. See Brasic v. Heinemann's Inc., 121 F.3d 281, 284 (7th Cir.1997) ("[A]s did the district court, we accept as true all material facts contained in [the defendant's] 12(M) statement...."). Garrison has nevertheless included in her appellate briefs facts which are not included in the defendants' Rule 12(M) statement. We hold that Garrison was not authorized to include these additional facts, and we thus do not consider them. See Holmberg v. Baxter Healthcare Corp., 901 F.2d 1387, 1392 n. 4 (1990) ("To the extent Baxter's brief makes a reference to ... facts outside the record, those portions of the brief are properly stricken.... Baxter is impermissibly attempting to build a new record on appeal.")
 
 
 [3]
 The record does not reveal whether the other firefighter was male or female
 
 
 [4]
 Burke's actions on this date and on the following dates do not rise to the level of sexual harassment, but Garrison claims that the incidents must be viewed in context with Burke's preceding actions and that, when viewed in this light, the City's failure to keep Burke away from Garrison demonstrates the City's indifference to her welfare
 
 
 [5]
 In this respect, Garrison's case differs in a vital area from our decision in Bohen v. City of East Chicago, Indiana, 799 F.2d 1180 (7th Cir.1986). In Bohen, the plaintiff, a dispatcher for the city fire department, alleged that she had been sexually harassed. Unlike the facts in the case before us, the plaintiff in Bohen was able to demonstrate that the harassment that she suffered was a "custom" accepted by the city: "[S]exual harassment was the general, on-going and accepted practice at the East Chicago Fire Department, and high-ranking, supervisory, and management officials responsible for working conditions at the department knew of, tolerated, and participated in the harassment. This satisfies § 1983's requirement that the actions complained of be the policy or custom of the state entity." Id. at 1189. Garrison, on the other hand, has failed to present any evidence showing that sexual harassment was an "on-going and accepted practice" in the City of Rockford Fire Department, and that acts of harassment went unpunished
 
 
 [6]
 Plaintiff never argued, until her reply brief, that a "final policy-making authority" was involved in handling her complaint, and by this time it was too late. See Matter of Bear, 789 F.2d 577, 579 (7th Cir.1986) ( "Issues appearing for the first time in a reply brief will not be considered by this Court.") (citations omitted). Moreover, even if she had argued in a timely fashion that a "final policy-making authority" was involved, the evidence would not support such a claim. Whether an officer has final policy making authority is a question of state law. See Pembaur v. City of Cincinnati, 475 U.S. 469, 482-84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Pursuant to Illinois statute, the Board of Police and Fire Commissioners are the ultimate arbiters of policy and discipline in the fire departments of the State of Illinois, see 65 ILCS 5/10-2.1-17. Cf. DeGuiseppe v. Village of Bellwood, 68 F.3d 187, 189 (7th Cir.1995) (pursuant to 65 ILCS 5/10-2.1-17, final authority for issuing disciplinary measures against a police officer is vested exclusively in the Board of Police and Fire Commissioners). There is nothing in the record evidencing that Garrison ever contacted the Board, or that the Board even was aware of her complaints at all