Camuel CROSS, Plaintiff,

v.

**CHICAGO SCHOOL REFORM
BOARD OF TRUSTEES,**
Defendant.

No. 98 C 8416.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 4, 2000.

Lewis W. Powell, III, Law Offices of Lewis W. Powell, III, Chicago, IL, Kimberly Joy Seymore, Law Offices of Kimberly J. Seymore, Chicago, IL, H. Yvonne Coleman, Chicago, IL for plaintiff.

Taryn Springs, Rohit Sahgal, Marilyn F. Johnson, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Camuel Cross sued the Chicago School Reform Board of Trustees ("Board") for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The Board has filed a motion for summary judgment, which we grant for the reasons stated below.

### RELEVANT FACTS

Cross failed to submit a proper response to the Board's Statement of Undisputed Material Facts. Under Local Rule 56.1(a) (formerly Local Rule 12(M)), the moving party must submit a statement of undis-

puted material facts. In response, the nonmovant must submit: (1) "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon"; and (2) "a statement ... of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(A)-(B) (formerly Local Rule 12(N)). The Seventh Circuit has upheld severe consequences for a nonmovant's failure to comply with these rigorous requirements:

> [A] failure to properly contest in the 12(N) statement of material facts set out in the movant's 12(M) statement, constitutes a binding admission of those facts. In such a case, we "depart from our usual posture of construing all facts in favor of the nonmoving party; rather we accept as true all material facts contained in [the moving party's] 12(M) statement."

*Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir.1997) (quoting *Johnson v. Gudmundsson*, 35 F.3d 1104, 1108 (7th Cir.1994)).

■ In his response to the Defendant's Statement of Facts, Cross denies the truth of twenty-eight of the Board's seventy-six numbered paragraphs. None of Cross' denials, however, is supported by any references to the record. *See Garrison v. Burke*, 165 F.3d 565, 567 (7th Cir.1999); *Brasic*, 121 F.3d at 284. As a result, all material facts contained in the Board's Statement of Facts are accepted as true for the purposes of summary judgment. *Id.*

Plaintiff Cross was a music teacher at Gordon Hubbard High School ("Hubbard"), a Chicago Public School, from August 1992 to May 1996. Cross alleges that, for part of the time that he was teaching at Hubbard, Charles Vietzen, the principal, sexually harassed him. Beginning sometime before 1994, Cross was bothered by Vietzen's conduct toward him, which he believed constituted "harassment." (R. 19, Def.'s Statement of Material Facts. Ex. A, Cross Dep. at 116.) Cross told Vietzen that he did not approve of Vietzen's conduct. Even after this conversation, Cross claims that Vietzen sexually harassed him on a number of occasions, specifically: (1) Vietzen showed Cross a sexually explicit birthday card in 1994 in the presence of other people, (2) Vietzen touched him sometime during the 1994–95 school year in the school cafeteria; (3) Vietzen put his arm around Cross during the same school year in the lunchroom; (4) in September 1994, Vietzen, in the presence of other teachers, asked Cross to join him for cocktails; and (5) in January 1995, Vietzen asked Cross to take off his clothes. In addition, Cross alleges that Vietzen put his knee in Cross' behind and that Vietzen told him sexually explicit jokes, but Cross cannot recall when these alleged incidents occurred. In spite of Vietzen's alleged conduct, Cross had no difficulty in performing his duties teaching band.

In January 1995, one of the school counselors informed Vietzen that two female students accused Cross of having inappropriate relationships with them. The Cook County Attorney's office investigated the allegations, but took no action against Cross. During the course of the investigation, Cross admitted to Vietzen that he had engaged in inappropriate activities, such as going to a student's house, having a student ride in his car, and going to a restaurant with a student. As a result of Cross' inappropriate conduct, Vietzen lowered Cross' efficiency rating to satisfactory for the 1994–95 school year. During the same school year, Cross' high rate of absenteeism prompted Vietzen to speak with him four or five times.

Vietzen left Hubbard for a short time, between December 1995 and March 1996, during which time Valerie Doubrawa was the acting principal of the school. On March 11, 1996, Doubrawa issued an oral and written reprimand to Cross because of

his excessive absences and failure to give prior notification of absences. On March 20, 1996, Cross wrote a letter to Dr. Jordan, the Region Five Superintendent and Vietzen's superior, criticizing the administration at Hubbard; specifically, he complained that the reprimand he received was unjustly issued. In that letter, however, Cross made no mention of being subjected to sexual harassment or that Vietzen had engaged in inappropriate conduct toward him. Sometime in May 1996, after Vietzen's return, Cross filled out a leave of absence form, but he did not receive approval for the leave. Notwithstanding the lack of approval, Cross took a leave. He returned to school with his union representative on May 28, 1996 to try to meet with Vietzen, who refused to see them. Vietzen never told Cross that he could not return to work at Hubbard, nor did he terminate Cross' employment. On June 18, 1996, Cross filed a charge of sexual harassment and retaliation against the Board with the Illinois Department of Human Rights ("IDHR") and the EEOC. In August 1996, Cross left Chicago; on July 7, 1997, Cross executed a CPS resignation form indicating that his resignation was effective November 4, 1996, that he was on medical leave, and that he wanted early retirement. Thereafter, the EEOC issued a Notice of Right–to–Sue Letter, and Cross filed this action, alleging sexual harassment and retaliation under Title VII. Currently pending before this Court is the Board's motion for summary judgment. For the reasons that follow, the motion is granted.

## ANALYSIS

### I. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a ver-

dict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any probative evidence supporting his complaint. *Id.* at 249, 106 S.Ct. 2505. The non-moving party is required to go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor. *Crim v. Board of Educ. of Cairo Sch. Dist. No. 1,* 147 F.3d 535, 540 (7th Cir.1998). However, if the evidence is merely colorable, is not significantly probative, or merely raises "some metaphysical doubt as to the material facts," summary judgment may be granted. *Liberty Lobby,* 477 U.S. at 261, 106 S.Ct. 2505.

### II. Sexual Harassment

#### A. Statute of Limitations

■ In Illinois, a complainant must file a charge with the Equal Employment Opportunity Commission or the appropriate state agency within 300 days of the alleged discriminatory act; failure to do so renders the charge untimely. *Filipovic v. K & R Express Systems, Inc.,* 176 F.3d 390, 396 (7th Cir.1999). Thus, Cross must allege sexual harassment occurring between August 24, 1995 and June 18, 1996, the day he filed his charge. Because all of the alleged acts of sexual harassment occurred before August 24, 1995, Cross' claim is time-barred.

■ Cross argues that the harassment was ongoing, and, therefore, his claim was timely filed. A "continuing violation" exists when "it would be unreasonable to expect the plaintiff to perceive offensive conduct as Title VII harassment before the limitations period runs, or the earlier discrimination may only be recognized as actionable in light of events that occurred

later, within the period of the statute of limitations." *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 344 (7th Cir.1999). Thus, the doctrine "allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period." *Garrison,* 165 F.3d at 569. Where the plaintiff knows long before he sues that he was a victim of actionable harassment, however, the continuing violation doctrine does not apply. In such a case, the plaintiff "cannot reach back and base [his] suit on conduct that occurred outside the statute of limitations." *Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1167 (7th Cir.1996).

■ Contrary to Cross' assertion, the continuing violation doctrine does not apply in this case. The most recent harassing act of which Cross complains occurred during the 1994–95 school year and therefore took place outside of the 300–day limitations period. The only mention of any harassment occurring within the limitations period is Cross' bare allegation, in his EEOC charge, that the period of harassment did not end until April 1996. Cross, however, does not support this allegation by citing any specific examples of harassment that occurred anytime within the limitations period, as he must to defeat summary judgment. *See Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. 2505 (plaintiff cannot rest on mere allegations without any significant probative evidence to support his complaint). Therefore, Cross' sexual harassment claim is time-barred and fails as a matter of law.

### B. Plaintiff Cannot Establish Sexual Harassment

■ Even if Cross' claims are not time-barred, he cannot survive summary judgment on the merits. Title VII proscribes sexual harassment. 42 U.S.C. § 2000e–2(a)(1). Title VII is violated when sexual harassment is so "objectively severe or pervasive as to alter the conditions of the victim's employment and to create an abusive working atmosphere." *Shepherd v. Slater Steels Corp.,* 168 F.3d 998, 1008 (7th Cir.1999); *Hardin,* 167 F.3d

at 345. The environment must be both objectively and subjectively offensive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The Supreme Court has recognized that same-sex harassment is actionable under Title VII to the extent it occurs "because of" the plaintiff's sex. *Oncale v. Sundowner Offshore Serv., Inc.,* 523 U.S. 75, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998).

■ Even if Cross could successfully show that Vietzen's conduct toward him was motivated by the fact that Cross was male, he cannot show that the conduct created a hostile or abusive working atmosphere, as required to prove a Title VII violation. *Oncale,* 118 S.Ct. at 1003. To determine whether a work environment may properly be called "hostile" or "abusive," we must consider all of the circumstances of the environment. *Harris,* 510 U.S. at 23, 114 S.Ct. 367. In particular, we must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* These factors must be evaluated from both a subjective and objective perspective. *Id.* at 21–22, 114 S.Ct. 367. Even if we assume that Cross subjectively felt that the working environment was abusive, objectively a reasonable person could not find that Cross' working environment was hostile. The alleged incidents were isolated and occurred over the course of more than one school year; none was physically threatening; and the actions were merely offensive and not abusive. Finally, Cross, himself, testified that his work was not affected by Vietzen's conduct. (R. 19, Def.'s Statement of Facts Ex. A, Cross Dep. at 44–47.) Title VII is not a "general civility code" of the American workplace, and, although Vietzen's conduct may have been inappropriate, it did not amount to a violation of Title VII. *Oncale,* 118 S.Ct. at 1002. We conclude that there is no genu-

ine issue of material fact regarding Cross' sexual harassment claim that would preclude summary judgment for the Board.

## III. Retaliation

■ Title VII prohibits retaliation against an employee who has engaged in activity protected by the Act. 42 U.S.C. § 2000e–3(a); *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1038 (7th Cir.1998). To demonstrate a prima facie case of retaliation, Cross must establish that: "(1) the plaintiff engaged in statutorily protected activity; (2) he suffered an adverse action; and (3) there is a causal link between the protected activity and the adverse action." *Filipovic*, 176 F.3d at 398. If Cross can establish these elements, the Board has the burden to produce a legitimate, nondiscriminatory reason for its actions. *Id.* at 1038–39. If the Board meets its burden of production, Cross can survive summary judgment only if he can prove that the Board's reason is pretextual. *Id.* at 1039.

Cross alleged, in his EEOC charge, that he was subjected to adverse action because, in 1995, he told Vietzen that he did not want to have a personal relationship with him. Specifically, Cross claims that, on April 3, 1995, Vietzen falsely accused him of drug use in front of his students and other faculty members and that, on June 25, 1995, he was given a negative performance evaluation.[1] Because these alleged retaliatory acts occurred outside of the 300–day statute of limitations period, his claim based on these acts is time-barred. 42 U.S.C. § 2000e–5(e)(1).

■ The only additional potentially retaliatory action, which was not specified in the charge but did take place within the limitations period, is Doubrawa's oral and written reprimand regarding his excessive absences. Such a reprimand does not constitute adverse action. *Sweeney v. West*, 149 F.3d 550 (7th Cir.1998) (negative performance evaluations, standing alone, cannot constitute an adverse employment action). Even if the reprimand did rise to the level of an adverse action, the reprimand was issued because of a legitimate, nondiscriminatory reason, *i.e.*, excessive absences that Cross does not contest. Therefore, we grant summary judgment for the Board on Cross' retaliation claim.

## IV. Constructive Discharge [2]

■ Cross also alleges that he was forced to resign because of the alleged sexual harassment he was forced to endure. (R. 1, Compl.¶ 25.) An employee is generally expected to remain employed while seeking redress for the discrimination. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir.1998). But, "[t]hrough constructive discharge, 'a plaintiff who is forced out by discriminatory conduct may bring a successful Title VII claim even though the plaintiff was never officially dismissed by the defendant.'" *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 377 (7th Cir.1998) (quoting *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 517 (7th Cir.1996)). A constructive discharge claim requires a plaintiff to establish that "(1) the conditions at work were so intolerable that a reasonable person would have been compelled to resign; and (2) the working conditions were intolerable in a discriminatory way." *Id.* (quoting

---

1. Cross, in his EEOC charge, originally stated that these activities occurred in 1996, but he corrected the record in his deposition testimony, in which he states that the correct year was 1995. (R. 18, Def.'s Mot. for Summ. J. Ex. B, Cross. Dep. at 162–66.)

2. The Board argues that Cross cannot bring a constructive discharge claim because he did not raise it in his EEOC charge. Title VII, however, does not necessarily preclude a court from hearing a case where the employee's complaint makes different allegations than those alleged in his administrative charge. Courts can hear complaints that are "like or reasonably related to" the administrative charges that were filed. *Jenkins v. Blue Cross Mut. Hospital Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.1987). We need not resolve whether or not the constructive discharge claim was "like or reasonably related to" the allegations in Cross' IDHR charge because Cross cannot show that he was constructively discharged.

*Harriston v. Chicago Trib. Co.,* 992 F.2d 697, 705 (7th Cir.1993)); *see Washington v. Jenny Craig Weight Loss Centres,* 3 F.Supp.2d 941, 951 (N.D.Ill.1998) (plaintiff bears burden of showing that working conditions were so intolerable that any reasonable person would be compelled to resign). The standard is hard to meet. *See Drake,* 134 F.3d at 886 ("More than ordinary discrimination is necessary to establish a constructive discharge claim; in the 'ordinary' case, an employee is expected to remain employed while seeking redress.").

■ Cross does not meet his burden. The record before the Court contains only sparse information regarding the allegedly intolerable conditions. As support for his claim, Cross cites being shown "an extremely offensive photograph" and being subjected to "grossly offensive conduct and commentary." (R.21, Pl.'s Resp. at 10.) Cross does not give the dates of the alleged incidents, the specific nature of the conduct, or the pervasiveness of the acts. A single offensive photograph and wholly unspecified "offensive conduct and commentary" cannot, as a matter of law, establish the basis of a constructive discharge claim. We conclude that Cross has failed to present sufficient evidence to show that the conditions were so intolerable that a reasonable person would have had no choice but to resign.

## V.  Vicarious Liability of the Board

■ Finally, Cross argues that the Board is vicariously liable under the doctrine of respondeat superior because it knew or should have known of Vietzen's harassment and failed to investigate. To aid our analysis of the Board's vicarious liability, we must look to agency principles. *Burlington Indus. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2265, 141 L.Ed.2d 633 (1998) (Congress has directed federal courts to interpret Title VII based on agency principles). The Restatement (Second) of Agency provides "a useful beginning point for a discussion of general agency principles." *Burlington,* 118 S.Ct. at 2266. Under the Restatement, "[a] master is subject to liability for the torts

of his servants committed while acting in the scope of their employment." Restatement § 219(1). Logic dictates that liability of the servant is a precondition to finding the master vicariously liable. Because we have found that Cross has not demonstrated sufficient facts for a jury to reasonably infer that the servant (Vietzen) sexually harassed or retaliated against him, we cannot find the Board vicariously liable.

■ Moreover, when no tangible adverse employment action is taken, an employer can raise an affirmative defense to any liability or damages under *Ellerth* by showing that: (1) it exercised reasonable care to prevent or correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *Ellerth,* 118 S.Ct. at 2270. The facts in this case establish that Cross was aware of how to complain but inexplicably never complained about any alleged sexual harassment until he filed his EEOC charge. Thus, even if Cross could establish vicarious liability under *Ellerth,* his damages claim would fail entirely because he never gave the Board an opportunity to address these allegations.

## CONCLUSION

Because Cross has not produced any evidence from which a reasonable jury could find in his favor, we grant summary judgment in favor of the Board and against Cross. (R. 18–1.) We instruct the Clerk of Court to enter judgment accordingly pursuant to Federal Rule of Civil Procedure 58.