**James DOCKERY, Plaintiff–Appellant,**

v.

**DAYTON HUDSON CORPORATION d/b/a Marshall Field's & Company, Defendant–Appellee.**

**No. 00–3235.**

United States Court of Appeals, Seventh Circuit.

Submitted June 18, 2001.*

Decided June 18, 2001.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 30, 2001.**

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

** Please note that Judge Ann Claire Williams took no part in the consideration of this case.

Before BAUER, ROVNER, and EVANS, Circuit Judges.

## ORDER

James Dockery brought suit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981, alleging that his supervisors continuously harassed him and then failed to promote him because he is an older African American. The district court granted summary judgment for Dockery's employer, Marshall Field's, concluding that his claims were untimely and that, in any event, they were barred because he failed to take advantage of Marshall Field's anti-harassment policy and internal complaint procedure. We affirm.

Marshall Field's hired Dockery, an African-American male, as a furniture salesman in 1994 when he was fifty-one years old. At the time he filed this suit, he continued to work for Marshall Field's, and regularly ranked as one of Marshall Field's top five salespeople. When he was hired, and again in 1997, Dockery was given an employee handbook that contained a policy called "Harassment Free Environment" that prohibited harassment on the basis of sex, race, or age. The Policy directed employees to "report [their] concerns [about harassment] to [their] supervisor or manager, the Human Resources manager where [they] work or where [they] applied for employment, any Human Resources manager, or call the Equal Opportunity Access Line." The Equal Opportunity Access Line is a toll-free number employees can call at any time to report harassment or discuss their concerns about discrimination. Dockery admitted at his deposition that he never used any of the complaint procedures in the anti-harassment policy or called the Equal Opportunity Access Line to report any of the conduct that gives rise to his claims in this suit.

In Spring 1995 Jack Sullivan was hired as the manager of Dockery's department, a post Sullivan retained until he was transferred in April 1996. According to Dockery, Sullivan harassed him continuously. Specifically, Dockery says that in 1995, even though Dockery was one of Marshall Field's best salespeople, Sullivan placed him in the least profitable area of the sales floor and paid him a smaller-than-promised commission while directing the most profitable sales orders to Caucasian employees. Dockery also alleged that Sullivan attempted to make his work environment "unbearable." In particular, Dockery alleged that Sullivan sometimes intentionally did not call on him when he raised his hand at meetings, once turned his desk toward the wall so he could not see the sales floor (thus allegedly interfering with his ability to interact with customers), and failed to obtain a computer password or business cards for him. Dockery testified at his deposition that when he complained to Sullivan in August 1995 about Sullivan's allegedly discriminatory treatment of him, Sullivan responded, "You people are very pushy" and then

"walked away mumbling something about black people, nigger, or something like that."

In May 1996 Dockery learned that Marshall Field's had hired Christine Buvinger to replace Sullivan. Dockery claimed that Buvinger continued Sullivan's same pattern of harassment by placing younger, Caucasian salespeople in the most profitable positions on the sales floor. Dockery also claimed that, like Sullivan, Buvinger attempted to make his working environment intolerable. In particular, he claimed that Buvinger openly ignored him while she introduced herself to Caucasian salespeople and, though Dockery was the most profitable salesperson on the floor, refused to speak to him until June 1996, when she asked him if he wanted a transfer. Thereafter, Dockery claimed that Buvinger always treated him with hostility.

On December 19, 1996, Dockery filed a charge of discrimination and retaliation with the EEOC. The charge included a claim that Marshall Field's failed to promote him on the basis of his age and race. The EEOC dismissed the charge and thereafter Dockery filed this suit.

The district court granted summary judgment to Marshall Field's. The court first concluded that Dockery's claims were time-barred to the extent they were based on conduct that occurred before February 24, 1996 (the 300–day period before the filing of the discrimination charge). Although Dockery argued that his claims were timely because he had alleged a continuing violation, the court rejected this argument in light of his admission at his deposition that as early as August 1995 he was on notice that he had a claim. In any event, the court went on to explain, Dockery could not recover damages because under *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), he unreasonably failed to take advantage of Marshall Field's anti-harass-ment policy and complaint procedure. Finally, the court concluded that Dockery could not establish a prima facie case of discrimination based on Marshall Field's alleged failure to promote him because he never applied for a promotion or transfer (Dockery does not challenge this finding on appeal). Our review is de novo, and we evaluate the record in the light most favorable to Dockery, drawing all inferences in his favor. *Jordan v. Summers*, 205 F.3d 337, 341 (7th Cir.2000).

On appeal Dockery contends that the district court erred in rejecting his continuing violation argument and thus in finding that his claims were time-barred. Under the continuing violation theory, a plaintiff may obtain relief for a time-barred act by linking it with an act that is within the limitations period. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir.2000). We have recognized three types of a continuing violation: (1) where the employer's decision-making process takes place over time making it difficult to pinpoint the date of the violation; (2) where the employer has a systematic and open policy of discriminatory conduct; and (3) where the conduct is so "covert" that its discriminatory character is not immediately apparent. *Place v. Abbott Labs.*, 215 F.3d 803, 808 (7th Cir.2000), *cert. denied*, 531 U.S. 1074, 121 S.Ct. 768, 148 L.Ed.2d 668 (2001). Dockery argues that he alleged the first and third types of a continuing violation. He apparently maintains on appeal that Sullivan and Buvinger were part of a conspiracy to create an all-Caucasian workforce by allowing Caucasians to work more hours, directing customer orders to Caucasian salespeople, and "tampering" with Dockery's sales so customers would complain about him.

The facts do not fit either the first or third variations of a continuing violation. The first type of continuing violation does

**404**

not apply here because there was no decision-making process involved; Dockery never applied for a promotion or transfer and was not terminated. The third type does not apply because the conduct of which Dockery complains was carried out openly and not covertly. *See Speer v. Rand McNally & Co.*, 123 F.3d 658, 663 (7th Cir.1997). Finally, the continuing violation theory does not apply where as here a plaintiff is aware of the discriminatory nature of the conduct when it occurs. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir.1999). Dockery admitted at his deposition that he believed he had been the victim of actionable conduct no later than August 1995 when, he asserts, Sullivan referred to African Americans as niggers. Dockery thus did not need "the light of subsequent events" to recognize that he had a claim, and cannot use the continuing violation theory to save his claims. *Garrison v. Burke*, 165 F.3d 565, 570 (7th Cir.1999); *Moskowitz v. Tr. of Purdue Univ.*, 5 F.3d 279, 281–82 (7th Cir.1993) ("[A plaintiff] may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one.").

██ Dockery also appears to challenge the district court's holding that, regarding the conduct within the limitations period, his harassment claims are barred by the affirmative defense set forth in *Ellerth*. Marshall Field's posed this affirmative defense in its brief supporting its summary judgment motion. According to this defense, even if Dockery's claims were timely, they still were barred because Dockery unreasonably failed to follow Marshall Field's anti-harassment policy by taking steps such as reporting his supervisors' alleged harassing behavior. An employer is not vicariously liable for the actionable harassment of an employee if the employer exercised reasonable care to prevent or correct any harassing behavior and the employee unreasonably failed to take

advantage of available preventative or corrective opportunities. *Ellerth*, 524 U.S. at 765; *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir.2000). Dockery does not dispute that the anti-harassment policy was a reasonable preventative or corrective measure. And Dockery admitted at his deposition that he ignored the policy because he was "too busy" to read it, and that he never reported his supervisors' alleged harassing behavior. Although he now asserts that he reported Sullivan's alleged harassing behavior to Marshall Field's Human Resources department in 1995 this assertion conflicts with his deposition testimony and, furthermore, he fails to support it with citation the record. *See* Fed. R.App. P. 28(a)(9), (e); *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir.), *cert. denied*, 530 U.S. 1277, 120 S.Ct. 2746, 147 L.Ed.2d 1009 (2000). The district court properly granted summary judgment on this issue.

AFFIRMED.